883 A.2d 518

**Denise KRAMER, Appellee/Cross–Appellant,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (RITE AID CORPORATION), Appellant/Cross–Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 2, 2003.

Decided Sept. 28, 2005.

310

312

Perry David Merlo, Lancaster, Mary T. Stark, Calvin Vroome, Philadelphia, for Rite Aid Corp.

Lawrence R. Chabin, for PA Trial Lawyers Ass'n, appellant amicus curiae.

Ronald Lee Calhoon, Deborah L. Packer, Harrisburg, for Denise Kramer.

James A. Holzman, Amber Marie Kenger, Richard C. Lengler, Harrisburg, for W.C.A.B.

Andrew Edson Greenberg, Norristown, for PA Defense Institute, appellee amicus curiae.

Thomas Joseph Kuzma, Harrisburg, for Dept. of Labor and Industry, appellee amicus curiae.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

Justice CASTILLE.

These cross-appeals raise two related issues: (1) whether Section 204(a) of the Pennsylvania Workers' Compensation Act (the "Act"), 77 P.S. § 71(a), allows all employers, or only self-insured employers, to take an offset against a claimant's workers' compensation benefits in the amount of a severance payment made by the employer to that claimant; and (2) whether, if such an offset is allowable, Section 204(a) violates equal protection considerations under the Pennsylvania and/or United States Constitutions. In this case, a Workers' Compensation Judge ("WCJ") found that appellant/cross-appellee Rite Aid Corporation, a privately insured employer (hereinafter "Employer"), properly took the offset and the Workers' Compensation Appeal Board ("the Board" or "WCAB") affirmed. The Commonwealth Court reversed, however, finding that the Section 204(a) offset was available only to self-insured employers. None of the tribunals below addressed the equal protection claim raised by appellee/cross-appellant Denise Kramer (hereinafter "Claimant"): the workers' compensation tribunals, because they lacked authority over a constitutional challenge claim, and the Commonwealth Court, because it ruled in Claimant's favor on non-constitutional grounds. For the reasons set forth below, we find that Section 204(a) allows all employers to offset workers' compensation benefits in the amount of a severance payment, and that, so construed, Section 204(a) does not violate equal protection. We therefore reverse the order of the Commonwealth Court and reinstate the underlying decision of the WCJ.

Claimant worked for Employer in its Shiremanstown, Pennsylvania facility when she sustained a work-related neck injury on February 20, 1998. Claimant received workers' compensation benefits for temporary total disability through June 28, 1998, when she returned to work with injury-related restrictions. On March 12, 1999, Employer relocated its Shiremanstown facility to Maryland, and as a consequence, Claimant was laid off. Following the layoff, Employer reinstated Claimant's

workers' compensation benefits.[1] Subsequently, Claimant also received a check from Employer in the amount of $3,355.02, representing the net amount of severance pay due to Claimant as a result of Employer's relocation. The payment was part of a "Severance Agreement" contained in a January 7, 1998 Addendum ("Addendum") to the most recent collective bargaining agreement ("CBA") between Employer and Teamsters Local 776 ("Union"), the union for Employer's employees, which covered the period from July 27, 1997 through July 23, 2000. Before July 27, 1997, prior CBAs had required Employer to remain in Pennsylvania, but the most recent CBA allowed Employer to leave the state and relocate to Maryland. Under the Addendum, employees agreed not to engage in a strike, slowdown, or boycott, in exchange for severance payments at the time of their layoff. Nothing in the CBA or the Addendum addressed the prospect of offsetting these anticipated severance payments against workers' compensation benefits.

On May 14, 1999, Employer sent Claimant a Notice of Compensation Benefits Offset ("Offset Notice"), informing her that it was authorized under Section 204(a) of the Act to treat the severance payment as a credit against Claimant's workers' compensation benefits. Section 204(a) states, in relevant part:

> The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under section 108 [occupational disease] and 306 [schedule of compensation for total disability], except for benefits payable under section 306(c) [disability resulting from certain permanent injuries].

1. *See* Section 413 of the Workers' Compensation Act, 77 P.S. §§ 1–1041.4; *Bethlehem Steel Corp. v. Workers' Compensation Appeal Bd. (Laubach)*, 563 Pa.313, 760 A.2d 378 (2000) (plurality opinion) (claimant who was not fully recovered from work-related injury and was laid off from light-duty job is entitled to reinstatement of benefits, as elimination of modified position affected claimant's earning power through no fault of his own).

77 P.S. § 71(a).[2] As a result of the Offset Notice, Claimant received no workers' compensation benefits from June 5, 1999 through August 9, 1999, after which her total disability benefits resumed.

On May 20, 1999, Claimant filed an Offset Review Petition alleging that Employer's offset was unconstitutional, was contrary to the Act, was not timely taken, and that the benefits paid her were not in the nature of severance benefits. Employer denied Claimant's allegations. The WCJ denied Claimant's petition on January 21, 2000, holding that the $3,355.02 lump sum Claimant received under the CBA was, in fact, a severance payment as defined in the relevant regulations, *see* 34 Pa.Code 123.2,[3] and that Employer timely and properly took an offset pursuant to Section 204(a) of the Act. The WCJ also concluded that he lacked jurisdiction over Claimant's equal protection challenge to the offset provision. Claimant appealed to the Board, which affirmed, and which also concluded that it lacked authority to pass upon Claimant's constitutional challenge.

Claimant then appealed to the Commonwealth Court, arguing that: (1) the $3,355.02 payment was not a severance benefit, but was "otherwise earned income;" (2) even if the payment was a severance benefit, it was not subject to a Section 204(a) offset because Employer, who was privately insured, was not "directly liable" for the payment of Claim-

---

**2.** This severance benefit offset provision was added to Section 204 as part of Act No. 57, § 3, June 24, 1996, P.L. 350 ("Act 57"), which took effect sixty days after its enactment. The remaining portion of Section 204(a) provides for similar offsets against workers' compensation benefits for unemployment compensation, Social Security old age benefits, and pension benefits.

**3.** Although the Act does not define "severance," the pertinent regulation does:

> Severance benefit—A benefit which is taxable to the employe and paid as a result of the employe's separation from employment by the employer liable for the payment of workers' compensation, including benefits in the form of tangible property. The term does not include payments received by the employee [sic] based on unused vacation or sick leave or otherwise earned income.

34 Pa.Code § 123.2.

ant's workers' compensation benefits;[4] and (3) Section 204(a), as amended in 1996 to provide for the offset of severance benefits, and as interpreted by the tribunals below, violated equal protection. A panel of the Commonwealth Court reversed in a published opinion by the Honorable Rochelle S. Friedman. The panel first found that the $3,355.02 lump sum payment to Claimant was a severance payment because she had received it pursuant to the CBA Addendum, and under the heading "Severance Agreement," which provided for "severance benefits." The panel further found that nothing in the Severance Agreement limited Employer's ability to apply a severance pay offset under Section 204(a). However, the panel agreed with Claimant that Employer was not entitled to the severance benefit offset. The panel noted that an injured employee who subsequently receives a severance payment paid by an "employer directly liable" for the payment of workers' compensation in effect forfeits workers' compensation disability benefits in the amount of those severance payments. The panel then found that the offset provision is intended to be afforded to the employer, not its private insurer, noting that the Act does not always use the terms "employer" and "insurer" interchangeably, and that it is the insurer who is directly liable for the actual payment of workers' compensation benefits. Because Employer here was not directly liable for the payment of Claimant's workers' compensation benefits, but rather was insured, making its insurer directly liable, the panel held that Employer was not entitled to a Section 204(a) offset. Judge Dan Pellegrini filed a Concurring Opinion in which he concurred in the result only. Judge Pellegrini would have found that Employer was not entitled to the offset for a different reason, *i.e.,* because the check received by Claimant was not a severance payment, but instead was otherwise earned income. *Kramer v. Workers'*

4. Claimant did not raise this specific argument before the WCJ or the Board. In seeking review before this Court, however, Employer did not argue that the Commonwealth Court erred in reaching and granting relief upon the claim; nor does Employer argue waiver in its appellate brief.

*Compensation Appeal Bd. (Rite Aid Corp.),* 794 A.2d 953 (Pa.Cmwlth.2002).

In workers' compensation appeals, this Court will affirm the adjudication below unless we find that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed, or that any necessary finding of fact is not supported by substantial evidence of record. 2 Pa.C.S. § 704; *Hannaberry HVAC v. Workers' Compensation Appeal Bd. (Snyder, Jr.),* 575 Pa.66, 834 A.2d 524, 527 (2003) (collecting cases). For purposes of appeal, the pertinent historical facts in this case are undisputed. The questions raised are purely legal (statutory construction in Employer's appeal; constitutionality in Claimant's appeal); as such, this Court's review is plenary. *See Hannaberry,* 834 A.2d at 527.

## I. Employer's Appeal: Availability of Severance Benefit Offset

■ Employer argues that the language in Section 204(a) is ambiguous at least insofar as it concerns the applicability of the offset provision to privately insured employers. Employer posits that, if the General Assembly had intended to restrict the availability of severance offsets only to self-insured employers, it could have done so easily and explicitly by using the modifier "self-insured." Indeed, Employer notes that the Act contains a separate provision, Section 305, 77 Pa.C.S. § 501(a)(2), specifically addressing self-insurance. In Employer's view, the severance benefit offset adopted in 1996 reflects a legislative determination that a claimant should not receive duplicate benefits in the form of severance pay and workers' compensation for the same loss of earnings. The offset thereby curtails the cost of work injuries. Employer notes that workers' compensation insurance rates are based in part upon claims history, and therefore, the reduction of workers' compensation benefits via severance offsets ultimately curtails costs even for privately insured employers, since the offset should result in lower future insurance premiums.

Employer further asserts that the only logical interpretation of the phrase "employer directly liable for the payment of compensation" is to understand it as a reference to cases where there are multiple concurrent employers. This asserted construction results in a scheme which would reduce the costs of work injuries by making the offset available only to the employer actually liable for the work injury, and not to any other employer the employee may have. Employer argues that, when this purpose of the offset provision's language is considered, it is clear that the General Assembly intended that the offset apply to privately-insured as well as self-insured employers.

Employer further argues that its interpretation is supported by settled rules of statutory construction, citing 1 Pa.C.S. § 1932(b) (statutes *in pari materia* shall be construed together), and § 1922(1) (General Assembly does not intend result that is absurd, impossible of execution or unreasonable). Looking to related provisions in the Act, Employer queries why Section 204(c) would require employees to report regularly to the insurer any receipt of severance benefits if the General Assembly truly intended the offset provision to apply only to self-insured employers. Employer also notes that, once liability for a work injury is established, the Act as a whole does not distinguish between employers based on their insurance status; rather, the employer and the insurer are seen as one. Employer further argues that this Court has discouraged drawing distinctions between self-insured employers and privately insured employers. Such a uniform treatment of employers would also ensure the uniform treatment of employees.

Claimant responds that Section 204(a) is clear and unambiguous and supports the Commonwealth Court's conclusion that only self-insured employers are entitled to an offset of severance payments against workers' compensation benefits, because the offset is only available to those employers who are "directly liable for compensation." Because Employer here has a private workers' compensation insurer, Claimant argues, Employer is not directly liable for payment of her workers'

compensation benefits, and thus, is not entitled to the severance offset. Claimant further argues that Employer's interpretation renders the language "directly liable for compensation" mere surplusage.

Claimant also submits that the terms "employer" and "insurer" are not interchangeable in all instances. Thus, in Claimant's view, although Section 305 of the Act states that insurers are entitled to all of the employer's immunities and protections, this Section does not grant an insurer all of the employer's rights, such as the right to an offset. Claimant also disputes Employer's assertion that Section 204(c) requires employees to report regularly to the insurer the receipt of other compensation that postdates the compensable injury, asserting that, when properly construed, Section 204(c) in fact requires employees to report this information to their employer.

Claimant further argues that the supposed legislative purpose of precluding double recoveries for the same loss of earnings is not advanced by granting a private insurer a credit for severance pay. Claimant notes that prior to the 1996 amendment's adoption of a severance offset, the courts had recognized that there was a different intent behind severance pay and workers' compensation benefits. Since the amendment, Claimant avers that courts have continued to allow an employer to take credit for a severance payment only if the payment is directly employer-funded. Furthermore, Claimant argues that the simultaneous receipt of severance benefits and workers' compensation benefits does not represent an impermissible double recovery because severance is paid as a result of the employee's separation from the employer regardless of injury, while workers' compensation is paid to compensate the physical inability to work caused by a workplace injury.

Finally, Claimant argues that allowing an employer's private insurer to take the offset does not comport with the Pennsylvania Workers' Compensation Manual of Rules, Classifications, and Rating Values for Workers' Compensation and Employer's Liability Insurance ("Manual"), which is published by the Pennsylvania Compensation Bureau. In accordance

with this Manual, Claimant asserts that premiums are computed on the basis of the total remuneration paid or payable for employees covered by the policy, but that severance pay is not taken into consideration. Claimant therefore concludes that the goal of reducing workers' compensation costs would not be furthered by granting a severance offset to a private insurer.

The principles governing this Court's review are settled. The object of interpretation and construction of Pennsylvania statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. § 1501 *et seq.* In construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." 1 Pa.C.S. § 1903(a). When the words of a statute are clear and free from all ambiguity, that plain language is generally the best indication of legislative intent. *Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 835 (2002); *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995); 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). It is only when "the words of the statute are not explicit" on the point at issue that resort to statutory construction is appropriate. 1 Pa.C.S. § 1921(c); *see also Commonwealth v. Packer,* 568 Pa. 481, 798 A.2d 192, 196 (2002).[5] We are also mindful that "[o]ur basic premise in workmen's compensation matters is that the Workmen's Compensation Act is remedial in nature and intended to benefit the worker, and, therefore, the Act

5. In such an instance, the intention of the General Assembly "may be ascertained by considering, among other matters:"
 (1) The occasion and necessity for the statute.
 (2) The circumstances under which it was enacted.
 (3) The mischief to be remedied.
 (4) The object to be attained.
 (5) The former law, if any, including other statutes upon the same or similar subjects.
 (6) The consequences of a particular interpretation.
 (7) The contemporaneous legislative history.
 (8) Legislative and administrative interpretations of such statute.
 1 Pa.C.S. § 1921(c).

must be liberally construed to effectuate its humanitarian objectives." *Hannaberry*, 834 A.2d at 528 (quoting *Peterson v. Workmen's Compensation Appeal Bd. (PRN Nursing Agency)*, 528 Pa.279, 597 A.2d 1116, 1120 (1991) (collecting cases)). Accordingly, "borderline interpretations" of the Act "are to be construed in the injured party's favor." *Hannaberry*, 834 A.2d at 528 (quoting *Harper Collins v. Workmen's Compensation Appeal Bd. (Brown)*, 543 Pa.484, 672 A.2d 1319, 1321 (1996)).

We agree with Employer that Section 204(a) is ambiguous with respect to the specific question presented here, *i.e.*, whether all employers, or only self-insured employers, qualify for purposes of the severance offset. The ambiguity is demonstrated by the plausible but opposing arguments forwarded by the parties. Thus, Claimant notes that the General Assembly easily could have included the word "insurer" if it had intended the offset to apply to insurers as well as employers, while Employer asserts that the General Assembly just as easily could have used the phrase "self-insured employer" if it wanted to make explicitly clear that the offset was intended to be limited only to that class of employers. Moreover, the General Assembly's use of the word "liable" ("employer directly liable for the payment of compensation") could be construed either narrowly—as evidencing liability in the sense of the entity who ultimately writes the compensation check, which would suggest that only self-insured employers would be entitled to the offset—or more broadly, as speaking in terms of the legal predicate for the award of workers' compensation benefits. In the latter instance, a privately insured employer could be said to be "liable" for the payment of compensation, even though, by obtaining private insurance, that employer secured a source for discharging its liability for the actual benefits payment.

The definitional sections of the Act contribute to the ambiguity. On one hand, Article I of the Act includes a definition of employer that provides as follows: "The term 'employer,' as used in this act, is declared to be synonymous with master, and to include natural persons, partnerships, joint-stock com-

panies, corporations for profit, corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it." 77 P.S. § 21. This definition does not mention the employer's insurance carrier. But, the term "employer" is defined differently in Article IV of the Act, which governs "Procedure." Thus, Section 401 of the Act states that: " 'employer,' when used in this article, shall mean the employer as defined in article one of this act, or his duly authorized agent, **or his insurer if such insurer has assumed the employer's liability** or the [State Workers' Insurance F]und if the employer be insured therein." 77 P.S. § 701 (emphasis supplied).

This Court's plurality opinion in *Brown v. Travelers Ins. Co.*, 434 Pa. 507, 254 A.2d 27 (1969) (Opinion by Jones, J., joined by Bell, C.J., and Eagen, J.), synthesized the Act's apparently divergent definitions of the term employer.[6] The question in *Brown* was whether Section 303 of the Act, 77 P.S. § 481, conferred the same immunity from common law liability upon an employer's workers' compensation insurer as upon the participating employer itself. As then drafted, Section 303 spoke only of employers, and not of insurance carriers.[7] The insurance carrier in *Brown* nevertheless argued that it was included in the term "employer" as set forth in Section 303, citing in support to the broader definition of employer found in Section 401. The claimant responded that the Article IV definition should be deemed to apply only to that article, and not to previous articles, and thus the general and more restrictive definition of employer set forth in Article I controlled. After noting a division of authority on the question in the courts of the Commonwealth, the plurality noted its agreement with the "exhaustive and able" opinion of Judges Barbieri and Ullman, of the Court of Common Pleas of Philadelphia County, in a case which, though unrelated, was also named *Brown v. Travelers Ins. Cos.*, 37 Pa. D. & C.2d 111 (Pa.Com.

6. Six Justices participated in the decision in *Brown*. Justice Cohen concurred in the result without opinion, and Justice O'Brien, joined by Justice Roberts, dissented.

7. Section 303 of the Act was rewritten in 1974.

Pl., Phila.County1965). Noting that both trial judges had had "extensive experience in workmen's compensation prior to their elevation to the bench," the *Brown* plurality quoted the previous *Brown* opinion at length:

"[A]rticle I (including section 103) and article IV (including section 401), are neither of them substantive. We have termed them 'external' articles, as compared with the legislatively designated substantive articles II and III. In short, the first and fourth articles are ancillary, descriptive, unsubstantive and are both basically procedural in significance. It would have been inappropriate for the legislature to have included the workmen's compensation insurance carrier as synonymous with employer in section 103 of article I of the act, because that section was delineating the status of employer and employe for the limited purposes of their status as parties to the statutory agreement to accept the compensation system which was set up in article III * * *. Chronologically speaking, it would be pointless and fruitless to discuss the insurance carrier in article I of the act, because the need for insuring could not arise until article III had become operative. It is the 'master' alone (who, before he accepts the act, has no need for a compensation insurance carrier), who is concerned with the substantive provisions of articles II and III. The employer not only has the right to reject the act, but frequently has done so.... Article IV set up all of the provisions for every form of process and remedy available to a claimant and the manner in which liability of the employer to him is to be met, satisfied, settled, concluded and released; so that ... the insurance carrier shares every one of the obligations, prerequisites, benefits, and release rights of the employer. Thus, we find the legislature stating in section 401 that the employer, who had to be defined in section 103 solely as the 'master' for articles II and III purposes, would, for all remedial or procedural purposes, be taken to be a complex entity, including within its scope the compensation insurer (be it a private company or the State Workmen's Insurance Fund), and the agent of such 'master'."

254 A.2d at 28–29 (quoting *Brown v. Travelers Ins. Cos.*, 37 Pa. D. & C.2d at 119, 120).[8]

The plurality then noted three policy considerations weighing in favor of this construction of the Act, which equated the insurer with the employer. First, failing to afford immunity to insurers would lead to a "regrettable discrimination ... between employers who are insured by the State Workmen's Insurance Fund or are self-insuring employers and those employers who carry private insurance." The plurality noted that such discrimination "would be inequitable and unjust both to the employers who utilize private insurance and to their employees." The plurality did not believe that the General Assembly ever intended such discrimination. Second, the plurality noted that a failure to afford insurers the same immunity from tort liability due to employers would discourage insurers from implementing voluntary safety programs in the workplace, for fear of being sued if a program were negligently implemented. Third, the plurality noted that the weight of authority from other jurisdictions supported a holding that insurers were entitled to the same immunity as employers. *Brown*, 254 A.2d at 29–31. For all of those reasons, the plurality concluded that "the insurance carrier is included within the term 'employer' as that word is used in Section 303 and, therefore, shares the employer's immunity from common law liability." *Id.* at 31.

Although *Brown* was a plurality decision, it has since been treated as binding authority for the proposition that the term "employer" as used in Section 303 includes insurers. *See DeJesus v. Liberty Mutual Ins. Co.*, 439 Pa. 180, 268 A.2d 924, 925–26 (1970) (six Justices participating; plurality opinion by Jones, J., joined by Cohen and Eagen, JJ., with Bell, C.J., concurring in result); *Jadosh v. Goeringer*, 442 Pa. 451, 275 A.2d 58, 61 (1971) (unanimous opinion by O'Brien, J., for four-Justice Court) (deeming proposition that insurer is included

8. We note that Judge Barbieri later served as a Judge on Commonwealth Court and, for a short time, as a Justice on this Court, and he also authored a respected treatise on Pennsylvania Workers' Compensation Law.

within term "employer" as used in Section 303, and therefore is entitled to immunity, as "finally determined" by *Brown* and *DeJesus*). *See also Manolovich v. Workers' Compensation Appeal Bd. (Kay Jewelers),* 694 A.2d 405, 408 (Pa.Cmwlth. 1997) ("the relationship between the employer and its insurance carrier is such that the two parties are in fact a single complex entity for purposes of defending against a claim"); *Heraeus Electro Nite Co. v. Workers' Compensation Appeal Bd. (Ulrich),* 697 A.2d 603, 607 (Pa.Cmwlth.1997) (same). *Accord Hankee v. Wilkes–Barre/Scranton Int'l Airport,* 532 Pa. 494, 616 A.2d 614, 619 (1992).

This case, of course, involves the Section 204(a) severance offset, rather than Section 303 immunity. Nevertheless, both questions have to do with remedial aspects of the Act, and specifically with the rights afforded to employers who participate in the workers' compensation system and to their insurers. Accordingly, the analysis of the structure of the Act accepted by the *Brown* plurality and by later decisions of this Court, which equates the employer and its workers' compensation insurance carrier for remedial purposes (and thus draws no distinction between self-insured and privately-insured employers), remains convincing and ultimately is controlling here.

■ Our conclusion in this regard is corroborated by the fact that the *Brown* plurality's analysis of the Act is consistent with fundamental precepts of statutory construction. Statutory words and phrases are to be interpreted with reference to the context in which they appear. 1 Pa.C.S. § 1932; *P & R Welding & Fabricating v. Workers' Compensation Appeal Bd. (Pergola),* 549 Pa.490, 701 A.2d 560, 564 (1997). In this regard, it is indeed significant that, once an employer has accepted the Act, and once liability for a work-related injury has been established, the Act generally does not distinguish between self-insured employers and those who purchase private coverage. For instance, Section 301 provides that, "Every employer shall be liable for compensation for personal injury to ... each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence...." 77 P.S.

§ 431. This "liability" provision makes no reference to insurers, but a later provision, Section 305 does, as it provides that where an employer purchases workers' compensation coverage, the insurer "shall assume the employer's liability hereunder, and shall be entitled to all of the employer's immunities and protection hereunder. . . ." 77 P.S. § 501(a)(1). This "immunity and protection" is the necessary concomitant of the liability accepted. Interpreting Section 204(a) so that only a self-insured employer is entitled to the "protection" or "immunity" of a severance benefit offset would negate this provision, and create an inconsistent and absurd result.

We also agree with Employer that, considering the Act as a harmonious whole, it is significant that Section 204(c) provides that, "[t]he employe is required to report regularly to the *insurer* the receipt of . . . severance benefits . . . which postdate the compensable injury under this act, subject to the fraud provisions of Article XI." 77 P.S. § 71(c) (emphasis added). A failure to disclose the receipt of a severance payment to the insurer can expose the claimant to criminal liability. 77 P.S. §§ 1039.2, 1039.5.[9] The notion that a failure to report severance payments to the insurer can expose the claimant to criminal charges, yet the insurer has no interest in those payments for offset purposes, is the type of absurd construction that Section 1922(1) of the Statutory Construction Act is designed to prevent.

9. Section 1102 of the Act provides a list of Insurance Fraud Offenses. A claimant commits an offense if he or she:

> Knowingly and with intent to defraud any insurer presents or causes to be presented to any insurer any statement forming a part of or in support of a workers' compensation insurance claim that contains any . . . incomplete . . . information concerning any fact or thing material to the workers' compensation insurance claim.

77 P.S. § 1039.2(2). Section 1105 of the Act provides for Punishment for Offenses:

> A person who violates Section 1102 shall be guilty of a felony of the third degree and, upon conviction thereof, shall be sentenced to pay a fine of not more than fifty thousand dollars ($50,000) or double the value of the fraud or to undergo imprisonment for a period of not more than seven years, or both.

77 P.S. § 1039.5(a).

It is also significant that the Department of Labor and Industry ("Department") construes this statute, which it administers, as drawing no distinction between self-insured and privately-insured employers for purposes of the severance offset. Section 204(d) of the Act directs the Department to issue rules and regulations to "interpret[ ] the provisions of the act which authorize the offset of workers' compensation benefits by amounts received in . . . severance . . . subsequent to the work-related injury." 77 P.S. § 71(d); 34 Pa.Code § 123.1. The Department's regulations require employees to "report *to the insurer* amounts received in . . . severance . . . benefits on form LIBC–756, 'Employee's Report of Benefits' . . . within 30 days of the employe's receipt of" such benefits. 34 Pa.Code § 123.3(a), (b) (emphasis added). Section 123.4(a) of the Department's regulations then provides that the insurer has a right to offset the receipt of those reported severance benefits:

> After receipt of Form LIBC–756, *the insurer may offset* workers' compensation benefits by amounts received by the employe from any of the sources in § 123.3 (relating to employe report of benefits subject to offset). The offset of workers' compensation benefits only applies with respect to amounts of unemployment compensation, Social Security (old age), severance and pension benefits received subsequent to the work-related injury.

34 Pa.Code § 123.4(a) (emphasis added). The insurer's right to offset of severance payments is corroborated by Section 123.11(a) and (c):

> (a) Workers' compensation benefits otherwise payable shall be offset by amounts an employee receives in severance benefits subsequent to the work-related injury. . . .
> \* \* \* \*
>
> (c) When the employee receives severance benefits in a lump-sum payment, the net amount received by the employee shall be divided by the weekly workers' compensation rate. The result is the number of weeks, and fraction thereof, *the insurer may offset* against future payments of workers' compensation benefits.

34 Pa.Code 123.11(a), (c) (emphasis added). While the Department's administrative interpretation does not bind us, it is consistent with our understanding of the Act and we therefore deem it persuasive. *See* 1 Pa.C.S. § 1921(c)(8); *Commonwealth v. Gilmour Manufacturing Co.*, 573 Pa. 143, 822 A.2d 676, 679 (2003) (interpretation of agency charged with administration of act is entitled to some deference, albeit an interpretive regulation which is unwise or violative of legislative intent should be disregarded).

It follows from our interpretive conclusion that we also agree with Employer that the General Assembly intended the phrase "employer directly liable for compensation" in Section 204(a) primarily to account for situations where a claimant has more than one employer and to clarify that, in that scenario, it is the employer/insurer responsible for the workers' compensation benefits and the severance payment, who is entitled to a severance offset. Double recovery for the same loss is thus avoided. Making severance offsets available to all liable employers in that position should effectively reduce the cost of work injuries because, contrary to Claimant's argument, it appears that a reduction in workers' compensation benefits paid out should reduce future insurance premiums. This is so because premiums for insurance coverage for workers' compensation are based not only on the classification of the type of business and its annual payroll, but also on the company's prior "experience modification" or claims history.[10] The Pennsylvania Rating Bureau states that, "Under experience rating insureds that maintained favorable loss levels in prior years receive a premium reduction ... while those with poor past loss experience are charged an increased premium." Commonwealth of Pennsylvania Rating Bureau, *Pennsylvania Workers' Compensation Experience Rating Plan*. Accordingly, any reduction in claims payout, including reductions resulting from severance offsets, should result in lower future insurance premiums for the privately-insured employer.

**10.** *See* Pennsylvania Insurance Department, *Your Guide to Workers' Compensation Insurance* (May 2001), *available at* http://www.ins. state. pa.us/ins/lib/ ins/consumer/brochures /2003_Work_Comp.pdf.

■ The Commonwealth Court's decision requires insurers to pay benefits above and beyond that which the policyholders/employers would pay if self-insured. The Commonwealth Court's limitation of Section 204(a) not only differentiates between types of employers, but also disparately treats their employees. As this Court noted long ago in *Brown*, we do not believe that the General Assembly intended such a distinction between employers, and between claimants, on questions involving obligations and benefits. For the foregoing reasons, we hold that, in appropriate cases, all "employers" may seek an offset of severance payments against workers' compensation benefits under Section 204(a), regardless of whether the employer is self-insured or privately insured. Accordingly, Employer in the case *sub judice* was entitled to an offset in the amount of the severance payment made to Claimant.

## II. Claimant's Appeal: Equal Protection

■ We now turn to the issue posed in the cross-appeal: whether Section 204(a) violates equal protection considerations under the Pennsylvania and/or U.S. Constitutions. This issue, which was properly preserved by Claimant, was reached by neither the workers' compensation tribunals, which lack authority over such a claim, nor the Commonwealth Court, which ruled in Claimant's favor on other grounds. Because the parties have fully briefed this purely legal subsidiary issue, and to avoid delaying a final resolution of this litigation, we will decide the issue now rather than remanding it to the Commonwealth Court for initial consideration.[11]

Claimant argues that Section 204(a) violates the Equal Protection Clause of the Fourteenth Amendment of the U.S.

11. *See, e.g., Murphy v. Duquesne Univ.*, 565 Pa. 571, 777 A.2d 418, 435 n. 12 (2001) (addressing issue on plenary review rather than remanding in interest of judicial economy); *Danville Area Sch. Dist. v. Danville Area Ed. Ass'n*, 562 Pa. 238, 754 A.2d 1255, 1262 (2000) (declining to remand and considering issues briefed but not reached by Commonwealth Court in interest of judicial economy); *Pennsylvania Game Comm'n v. State Civil Serv. Comm'n (Toth)*, 561 Pa.19, 747 A.2d 887, 891–92 (2000) (because parties briefed issue, it was considered rather than remanding to Commonwealth Court in interest of judicial economy).

Constitution and similar protections found in Article 1, Section 1 of the Pennsylvania Constitution.[12] Claimant avers that an unconstitutional differentiation has been made between injured and non-injured employees, as the statute only permits the latter to retain a severance payment upon layoff.[13] Claimant argues that Section 204(a) affects a fundamental right—a contractually created property right in her severance payment—and thus, the legislation is subject to strict scrutiny. In the alternative, Claimant argues that Section 204(a) fails under any of the three levels of scrutiny used to analyze equal protection claims, including rational basis.

Employer responds that the proper level of review of the substance of social welfare legislation is the rational basis test. Employer also notes that Claimant misstates the issue because her severance benefit was not taken from her; rather, her workers' compensation benefits (benefits her uninjured coworkers did not receive) were reduced by the amount she received as severance. Thus, Claimant received severance pay just as her co-workers did. The legislation therefore makes no distinction among workers whose jobs disappear, nor does it impede a claimant's right to receive severance pay or any contractually created property right.

Employer further asserts that, when the rational basis test is applied, Section 204(a) easily passes constitutional muster because the General Assembly relied on legitimate economic

---

12. Claimant also invokes Article I, Section 26 and Article 3, Section 32 of the Pennsylvania Constitution, but fails to explain how they support her equal protection claim. Article I, Section 26 safeguards the right not to be harassed or punished for the exercise of a constitutional right. *Probst v. Com.*, 578 Pa. 42, 849 A.2d 1135, 1142 (2004); *Fischer v. Dep't Pub. Welfare*, 509 Pa. 293, 502 A.2d 114, 123 (1985). Article III, Section 32 addresses local or special laws. *See Harrisburg Sch. Dist. v. Hickok*, 563 Pa. 391, 761 A.2d 1132, 1135–36 (2000) ("special law" violates Pennsylvania Constitution when its classifications are based on artificial or irrelevant distinctions used to evade constitutional prohibition against local laws). Since Claimant has made no attempt to develop her argument regarding either of these provisions, they will not be addressed.

13. Claimant's equal protection argument has nothing to do with the distinction between privately insured and self-insured employers, but instead challenges the offset itself.

reasoning in allowing a workers' compensation offset for severance benefits and the purposes of the legislation are directly furthered by the offset. Employer argues that Section 204(a) was enacted to curtail the costs of work-related injuries and to eliminate a claimant's receipt of duplicate benefits for the same loss of earnings. Employer asserts that the offset accomplishes these goals because the employer is responsible for both severance and compensation benefits. Even if an employer is privately insured, its premiums are based in part on experience, including the amount of workers' compensation benefits paid out in the past. Any reduction in the total amount paid out by the insurer, including reductions resulting from severance benefit offsets, necessarily results in lower costs for the employer.

The Equal Protection Clause of the Fourteenth Amendment provides that

> No state shall ... deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. Article I, Section 1 of the Pennsylvania Constitution provides:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. II, § 26. In evaluating equal protection claims under the Pennsylvania Constitution, this Court has employed the same standards applicable to federal equal protection claims, *see Probst,* 849 A.2d at 1143; *McCusker v. Workers' Compensation Appeal Bd. (Rushton Mining Co.),* 536 Pa.380, 639 A.2d 776, 777 (1994), and Claimant does not dispute that the protections are coterminous in this instance. This Court has summarized the basic principles governing equal protection review as follows:

> The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However ... [t]he right to equal

protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment and does not require equal treatment of people having different needs. The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications provided that those classifications are reasonable rather than arbitrary and bear a relationship to the object of the legislation.

*Curtis v. Kline*, 542 Pa. 249, 666 A.2d 265, 267–68 (1995) (citations omitted).

Turning to the merits, an initial determination must be made as to whether the statute creates a classification for the unequal distribution of benefits or imposition of burdens. *McCusker*, 639 A.2d at 778; *Commonwealth v. Parker White Metal Co.*, 512 Pa. 74, 515 A.2d 1358 (1986). Claimant argues that a distinction has been drawn between non-injured and injured workers who receive severance payments. But, the legislation at hand makes no such classification. By definition, the Act—including Section 204(a)—does not address non-injured workers, but only injured workers and, on its face, it applies equally to all individuals receiving workers' compensation benefits, *i.e.*, their compensation benefits will be offset by the amount of severance benefits they have received. Any difference in the treatment of injured versus non-injured individuals of the same employer who provides severance payments is a fortuity arising from factual circumstances which are external to any classification made by the statute. Because no classification for the unequal distribution of benefits or imposition of burdens has been created, there can be no equal protection violation.

Even if this Court were to assume that the external effect the statute has—*i.e.*, in creating a distinction between injured and non-injured workers in circumstances where the employer later offers severance benefit packages to multiple employees—is sufficient to create a triggering equal protection classification, it is clear that Claimant's challenge fails. First, we agree with Employer that the perceived distinction

is subject to rational basis scrutiny. The determination of the appropriate level of scrutiny (effectively, the standard of judicial review) depends upon the type of interest affected by the classification. Generally speaking, there are three different types of classifications calling for three different standards of review: (1) classifications which implicate a suspect class or a fundamental right are strictly construed in light of a compelling governmental purpose; (2) classifications which implicate an important though not a fundamental right or a sensitive classification are assessed under a heightened standard of scrutiny which seeks an important governmental purpose; and (3) classifications which involve none of these classes or rights are upheld if there is any rational basis for the classification. *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); *Curtis*, 666 A.2d at 268.

Claimant argues that Section 204(a) affects a fundamental right, the contractually-created property right in her severance payment, requiring this Court to utilize strict scrutiny. But, this assertion is based upon a faulty understanding of the issue at hand. This case does not involve the deprivation of a severance payment. Claimant concedes in her own statement of the facts that she received a check from Employer in the amount of $3,355.02, representing the net amount of severance pay due to Claimant as a result of Employer's relocating its facility to Maryland. Claimant kept this payment and was never asked or required to return it. Accordingly, she was not deprived of any fundamental right to this property. Nor has Claimant argued that the classification she alleges between non-injured and injured employees is suspect. The strict scrutiny test, therefore, does not apply.

Instead, the effect of the statutory offset was merely to reduce Claimant's workers' compensation benefits, an effect which plainly did not implicate a fundamental right.[14]

14. While the strict scrutiny test is applied in a due process analysis of social welfare legislation, it is settled that rational basis scrutiny is properly employed in an equal protection analysis of the substance of such legislation. *Richardson v. Belcher*, 404 U.S. 78, 80–81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

This Court has determined that the Act confers a social welfare benefit on injured workers, *McCusker,* 639 A.2d at 779–80, and Section 204(a) assists in defining the appropriate amount of benefits injured workers are eligible to receive. The expectation of public benefits does not confer a contractual right to receive expected amounts. *Richardson v. Belcher,* 404 U.S. 78, 80, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971) (involving equal protection analysis of Social Security benefits). Characterizing a legislative act as conferring a public benefit does not immunize it from constitutional scrutiny, *see Richardson,* 404 U.S. at 81, 92 S.Ct. 254 (public benefit legislation not immune from Fifth Amendment scrutiny), but a court's review of government regulation in the area of social welfare is deferential. *McCusker,* 639 A.2d at 779. A statutory classification in the area of social welfare is consistent with equal protection if it meets the rational basis test. *Richardson,* 404 U.S. at 81, 92 S.Ct. 254; *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Ligonier Tavern, Inc. v. Workers' Compensation Appeal Bd. (Walker),* 552 Pa.237, 714 A.2d 1008, 1011 (1998). Furthermore, a classification which is subject to rational basis scrutiny is accorded a strong presumption of validity. *Leheny v. City of Pittsburgh,* 183 F.3d 220, 226 (3d Cir.1999).

In applying the rational basis test, this Court has employed a two-step analysis: first, we determine whether the challenged statute seeks to promote any legitimate state interest or public value; and if so, we then determine whether the legislative classification is reasonably related to accomplishing that articulated state interest. *Commonwealth v. Albert,* 563 Pa. 133, 758 A.2d 1149, 1152 (2000); *Ligonier Tavern,* 714 A.2d at 1011 (distinctions having rational basis and relating to legitimate state purpose are not forbidden). This deferential standard recognizes the legislative prerogative to "define the scope and the duration of the entitlement to ... benefits, and to increase, decrease, or to terminate those benefits based on its appraisal of the relative importance of the recipients' needs and the resources available to fund the program." *Bowen v. Gilliard,* 483 U.S. 587, 598, 107 S.Ct. 3008, 97 L.Ed.2d 485

(1987); *McCusker*, 639 A.2d at 780. A state regulation in this area will not be deemed to violate equal protection merely because the classification drawn is imperfect. *Dandridge*, 397 U.S. at 485, 90 S.Ct. 1153; *McCusker*, 639 A.2d at 780. The classification "need only be directed at the accomplishment of a legitimate governmental interest, and to do so in a manner which is not arbitrary or unreasonable." *McCusker*, 639 A.2d at 781.

Under a rational basis analysis, the General Assembly need not specifically articulate the purpose or rationale supporting its action. It is enough that some rationale may conceivably be the purpose and policy underlying the enactment. *Albert*, 758 A.2d at 1152; *Nordlinger v. Hahn*, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). Thus, the courts are free to hypothesize reasons why the legislature created the particular classification at issue and, if some legitimate reason exists, the provision cannot be struck down, even if its soundness or wisdom might be deemed questionable. *Albert*, 758 A.2d at 1153; *Curtis*, 666 A.2d at 268.

In the absence of an explicit statement of legislative purpose, Employer suggests that the General Assembly enacted Section 204(a) to curtail the costs of work-related injuries, and to eliminate a claimant's receipt of duplicate benefits for the same loss of earnings. *See* Brief for Employer, at 16 (citing *Twp. of Lower Marion v. Workers' Compensation Appeal Bd. (Tansey)*, 783 A.2d 878 (Pa.Cmwlth.2001)). Employer cites to expressions of concern about the rising costs of workers' compensation in Pennsylvania and the competitive burden these costs place on businesses in Pennsylvania.[15] In Employer's view, Section 204(a) not only reduces the cost of workers' compensation to benefit the employer, but it does so in a particularly sensible fashion because the offset arises only

15. *See* Pennsylvania Legislative Journal–Senate, June 5, 1996 at 2034 (Sen. Loeper); *Id.*–Senate, June 19, 1993 at 2156 (Sen. Armstrong); *Id.*–House, June 16, 1993 at 1469 (Rep. Gladeck); *see also* Torrey & Greenberg, *Pennsylvania Workers' Compensation: Law & Practice* § 14.A6 (2001) (1996 amendments were economic legislation designed to address increase in cost of claims despite fewer work injuries).

where other employment-related income is being made available to the claimant by that employer.

 Claimant concedes that the legislative goals identified by Employer are legitimate state interests as a general matter, and we have no doubt that the Section 204(a) offset is designed to promote legitimate state interests. The general purpose of the Act is remedial in nature, as it is designed to compensate workers and their dependents who have suffered economic loss from work-related injuries. *Hannaberry*, 834 A.2d at 528 (quoting *Peterson*, 597 A.2d at 1120 (collecting cases)). At the same time, however, the Act balances competing interests: while offering the prospect of certain recovery to workers irrespective of fault on the part of their employers, the Act also offers employers relative cost-certainty in the form of limited exposure in the event of a work injury. *See, e.g., Thompson v. Workers' Compensation Appeal Bd. (USF & G Co.)*, 566 Pa.420, 781 A.2d 1146, 1153 (2001). Reasonable workers' compensation cost containment for employers, and the concomitant competitive benefit such cost containment offers for Pennsylvania businesses, unquestionably is a legitimate state concern.

The disputed point is whether the legislation at issue accomplishes its salutary purpose, *i.e.,* whether the severance pay offset bears a rational relationship to controlling workers' compensation costs. *Leheny*, 183 F.3d at 226. In this regard, Claimant repeats an argument she forwarded on Employer's appeal contending that the goal of reducing insurance costs is not achievable via the severance benefit offset because the calculation of workers' compensation insurance premiums, a process which is regulated by the Pennsylvania Insurance Department, does not include a consideration of severance payments. Claimant further argues that the goal of eliminating double recovery cannot be achieved because workers' compensation benefits and severance payments are made to compensate different losses.

We cannot agree. In the case of a self-insured employer—and in reviewing the constitutionality of the severance benefit

offset, we cannot lose sight of that circumstance—the offset directly reduces the employer's costs. Moreover, there is nothing irrational or arbitrary in offsetting severance benefits, irrespective of whether the employer is self-insured or privately insured. The worker experiences only one loss of earnings at a time, even if there is a prospect of compensation for that loss from multiple sources. The offset does not disadvantage the injured worker *vis a vis* his uninjured colleagues who also receive severance benefits because those workers do not receive a double benefit, in the form of workers' compensation payments, from the employer. Because the employment relationship is the basis for providing both severance payments and workers' compensation benefits (whether or not the compensation is paid through an outside insurer), the employer can avoid paying duplicate benefits for the same loss of earnings by using the offset. We conclude that the severance benefit offset bears a rational relationship to achieving the legislative goals.

Furthermore, as we have already concluded in resolving Employer's appeal, in the case of employers with private insurance, rates are based at least in part on past payment experience. If the insurer pays a claimant less for workers' compensation because the employer made severance payments to the claimant, which the insurer then offset against the compensation benefit, there is a prospect of reduced rates in the future. It is of no moment how efficiently the goal of cost reduction is accomplished because it is not this Court's task, in conducting a rational basis review, to say whether the statute is the wisest or best means to accomplish the legitimate legislative purpose. *McCusker,* 639 A.2d at 781.

Accordingly, we agree with Employer that the subject legislation serves a legitimate state interest in reducing the cost of workers' compensation benefits in Pennsylvania by allowing employers to avoid paying duplicate benefits for the same loss of earnings. Because the subject legislation is reasonably related to accomplishing that interest, the legislation passes equal protection scrutiny under the rational basis test and is constitutionally sound.

## Conclusion

For the foregoing reasons, we hold that: (1) Section 204(a) of the Act allows all employers, whether self-insured or privately insured, to take an offset in the amount of a severance benefit against an award of workers' compensation benefits; and (2) this severance benefit offset does not violate equal protection. Accordingly, we reverse the order of the Commonwealth Court and reinstate the decision of the Workers' Compensation Judge. Jurisdiction is relinquished.

Former Justice LAMB did not participate in the decision of this case.

Justice SAYLOR files a concurring opinion.

Justice EAKIN files a concurring opinion in which Justice NIGRO joins.

Justice SAYLOR, concurring.

I join the majority opinion, except in two respects. First, I agree with Claimant that it is not wholly apt to characterize the receipt of workers' compensation benefits and a severance, negotiated under a collective bargaining agreement, as a double benefit or recovery, particularly in light of the legislative compromise between loss-spreading and insulation of employers from tort liability on which the workers' compensation system is premised. *See Lewis v. School Dist. of Phila.*, 517 Pa. 461, 471–72, 538 A.2d 862, 867 (1988). Instead, I view Section 204(a) as coordinating an employer's existing contractual obligations with its liability arising under the Workers' Compensation Act, while ensuring that a claimant receives benefits for the reduction in earning capacity attributable to the work-related injury.

Second, I differ with the majority opinion to the extent that it can be interpreted as foreclosing an equal protection claim on the basis that no classification is present, because the pertinent statutory language does not specifically address the class of non-injured workers. *See* Majority Opinion, at 331–35, 883 A.2d at 532–33. *Cf. Hooper v. Bernalillo County*

*Assessor,* 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985) (holding that a state tax exemption statute that applies only to veterans living in the state before a specified date violated equal protection principles). Nonetheless, I agree with the majority's application of the rational basis test to Section 204(a), as well as the ultimate conclusion that the statutory provision is not violative of equal protection principles.

Justice EAKIN, concurring.

I agree with the majority that § 204(a) of the Pennsylvania Workers' Compensation Act, 77 P.S. § 71(a), allows both self-insured and privately-insured employers to offset Workers' Compensation benefits in the amount of a severance payment. However, I write separately because I do not agree that § 204(a) is ambiguous with respect to the question presented here. I find the phrase "employer directly liable for the payment of compensation and the benefits from a pension plan" is clear and unambiguous. *See id.* Rite Aid is the employer directly responsible for providing its employees with Workers' Compensation coverage and pension benefits. If Rite Aid decides to contract that responsibility out to a private insurance company, it does not absolve Rite Aid of its duty to provide such benefits to its employees. Thus, Rite Aid remains the "employer directly liable for the payment of compensation and the benefits from a pension plan" despite the fact that Rite Aid does not directly send the Workers' Compensation payments to its injured employees.

I agree that the legislature included the phrase "employer directly liable" in § 204(a) to account for a situation where a claimant has more than one employer. Majority Op., at 328–30, 883 A.2d at 530. If a claimant is currently receiving compensation from a previous employer for a permanent injury, for example, and is also currently receiving Workers' Compensation benefits relative to a separate injury from his current employer when he is laid-off and receives a severance payment, the phrase "employer directly liable" ensures that only the current employer takes the offset. I also agree that the General Assembly did not intend for § 204(a) to permit a

self-insured employer to take the offset, and yet deny privately-insured employers the same privilege. Majority Op., at 328–31, 883 A.2d at 530–31. However, while I agree that both self-insured and privately-insured employers are entitled to the offset, I do not believe it is necessary to engage in statutory construction to reach such a conclusion. I would hold both the self-insured and privately-insured employers are entitled to the offset, and that the private insurer in this scenario is entitled to take the offset by virtue of employer's entitlement to the offset.

Thus, I would hold § 204(a) is unambiguous, and it means just what it says, *i.e.*, that the employer directly liable for the payment of compensation or pension benefits—whether the employer pays those benefits himself or contracts with a private insurance company to pay his employees those benefits—is entitled to an offset in the amount of a severance benefit against an award of Workers' Compensation benefits.

Justice NIGRO joins this concurring opinion.