### Judith CAPUTO, Petitioner

v.

### WORKERS' COMPENSATION APPEAL BOARD (COMMONWEALTH of Pennsylvania), Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2011.
Decided Jan. 5, 2012.

Vincent J. Quatrini, Jr., Greensburg, for petitioner.

James A. Mazzotta, Pittsburgh, for respondent Commonwealth of Pennsylvania.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.[1]

OPINION BY Judge LEAVITT.

Judith Caputo (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board, which affirmed the decision of the Workers' Compensation Judge (WCJ) to deny her offset review petition. On appeal, Claimant argues that the Board erred. She contends that the offset provision in Section 204(a) of the Workers' Compensation Act (Act)[2] that reduced her compensation disability by a portion of her "old age" Social Security retirement benefits violates the Equal Protection Clause of Article I, Section 1 of the Pennsylvania Constitution.[3] Finding

---

1. This case was decided before Judge Butler's term ended on January 2, 2012.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 71(a).

3. It states:

 All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.
 PA. CONST. art. I, § 1.

no merit to Claimant's constitutional challenge, we affirm.

Claimant worked for the Commonwealth's Department of Military and Veterans Affairs (Employer) at the Hollidaysburg Veterans Home. In 2002, she sustained a work-related injury and was awarded total disability benefits in the amount of $452.85 per week. In August 2006, Claimant's income from disability compensation was augmented by her Social Security retirement benefits in the amount of $862 per month. One month later she began receiving a pension benefit of $405.47 per month from the State Employes Retirement System (SERS).

On December 5, 2006, Employer filed a Notice of Workers' Compensation Benefit Offset advising Claimant that it was taking a credit toward her disability compensation. The credit was equal to 50% of her Social Security benefit, or $99.31 per week, and $74.56 per week for her SERS pension benefit. Employer further advised Claimant that it was suspending payment of her disability benefit until March 14, 2007, in order to recoup its overpayment of $2,955.79 in disability compensation. Finally, Employer advised Claimant that when her disability compensation resumed after March 14, she would receive a benefit in the amount of $278.98 per week, which represented the difference between her weekly disability compensation of $452.85 and Employer's combined offset of $173.87 per week.

Claimant filed an Offset Review Petition alleging that Employer was not entitled to an offset credit of $173.87 per week. Claimant argued that Employer had to prove its entitlement to a credit before taking one, and that Employer could not suspend her benefits during the period of recoupment. The matter was assigned to a WCJ, and a hearing was held. On August 18, 2008, the WCJ circulated a decision and order granting in part and denying in part Claimant's review petition. Relevant to the present appeal, the WCJ concluded that Employer was entitled to deduct $99.31 per week from Claimant's disability benefit, which equalled 50% of her Social Security retirement benefit.[4] Claimant appealed to the Board, asserting, *inter alia,* that the offset for Social Security retirement benefits permitted by Section 204(a) of the Act is unconstitutional. The Board affirmed the WCJ's decision without addressing the constitutional issue. Claimant now petitions for this Court's review.[5]

On appeal,[6] Claimant argues that the offset provision in Section 204(a) for Social

---

**4.** The primary focus of the litigation before the WCJ was the amount of Employer's pension offset. The WCJ determined that Employer was entitled to a pension offset of $67.66 per week, not $74.56 per week as Employer had calculated. The WCJ held that Employer was entitled to a combined offset of $166.97 per week, leaving Claimant with a net disability benefit of $285.88 per week. The WCJ ordered Employer to reimburse Claimant $6.90 per week retroactively to the date on which it began offsetting her benefits.

**5.** Employer filed a cross-appeal to the Board challenging the WCJ's calculation of the pension offset credit. Employer did not prevail before the Board on that issue and filed a cross-petition for review with this Court. Claimant has since abandoned her challenge to Employer's right to a pension offset, opting instead to challenge only the constitutionality of the offset for Social Security retirement benefits. Employer has therefore withdrawn its cross-petition for review.

**6.** In workers' compensation appeals, this Court will affirm the adjudication below unless we find that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed, or that any necessary finding of fact is not supported by substantial evidence of record. 2 Pa.C.S. § 704. The question raised in this appeal,

Security retirement benefits violates the Equal Protection Clause of Article I, Section 1 of the Pennsylvania Constitution. Claimant urges this Court to follow the reasoning of the Utah Supreme Court in *Merrill v. Utah Labor Commission*, 223 P.3d 1089 (Utah 2009), which held that a similar offset provision in Utah's Workers' Compensation Act was unconstitutional under the equal protection provision of the Utah Constitution. Employer counters that this Utah precedent has little or no instructive value given our Supreme Court's holding in *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corp.)*, 584 Pa. 309, 883 A.2d 518 (2005). In *Kramer* the Supreme Court rejected an equal protection challenge to an offset in Section 204(a) for an employer-provided severance benefit, and Employer argues that this analysis applies with equal force to the statutory offset for Social Security and pension benefits.

We begin with the standard for deciding an equal protection challenge. Article I, Section 1 of the Pennsylvania Constitution provides:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

PA. CONST. art. I, § 1. Our Supreme Court has summarized the basic principles governing equal protection review as follows:

> The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However ... [t]he right to equal protection under the law does not absolutely prohibit the

Commonwealth from classifying individuals for the purpose of receiving different treatment and does not require equal treatment of people having different needs. The prohibition against treating people differently under the law does not preclude the Commonwealth from *resorting to legislative classifications provided that those classifications are reasonable rather than arbitrary and bear a relationship to the object of the legislation.*

*Kramer*, 584 Pa. at 332–33, 883 A.2d at 532 (quoting *Curtis v. Kline*, 542 Pa. 249, 254–55, 666 A.2d 265, 267–68 (1995)) (emphasis added).

■ With the above principles in mind, we turn to the offset provision at issue. Section 204(a) of the Act, 77 P.S. § 71(a), permits an employer or its insurer to take a credit against workers' compensation disability benefits for other types of benefits payable to the employee, including Social Security retirement benefits. The legislature has made the policy decision that because the employer helps to fund Social Security, it should receive a credit towards workers' compensation disability. In full, Section 204(a) provides:

> (a) No agreement, composition, or release of damages made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth. The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three hereof; and any release executed in consideration of such benefits shall be

concerning the constitutionality of Section 204(a) of the Act, is purely legal; as such, this Court's review is plenary. *Kramer v. Workers'*

*Compensation Appeal Board (Rite Aid Corp.),* 584 Pa. 309, 318, 883 A.2d 518, 523 (2005).

void: Provided, however, That if the employe receives unemployment compensation benefits, such amount or amounts so received shall be credited as against the amount of the award made under the provisions of sections 108 and 306, except for benefits payable under section 306(c) or 307. *Fifty per centum of the benefits commonly characterized as "old age" benefits under the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 et seq.) shall also be credited against the amount of the payments made under sections 108 and 306,* except for benefits payable under section 306(c): *Provided, however, That the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable injury.* The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c). The employe shall provide the insurer with proper authorization to secure the amount which the employe is receiving under the Social Security Act.

77 P.S. § 71(a) (emphasis added).

The first step in an equal protection inquiry is to determine whether the statute creates a classification for the unequal distribution of benefits or imposition of burdens. *Kramer*, 584 Pa. at 333, 883 A.2d at 532. Claimant urges this Court to follow the reasoning of the Utah Supreme Court in *Merrill*, which held that a similar offset for Social Security retirement benefits in Utah's Workers' Compensation Act[7] was unconstitutional under the "uniform operation of laws" provision of the Utah Constitution.[8] The *Merrill* court found that the legislative classification had two factors consisting of: (1) persons of the age of 65 who are (2) eligible for Social Security retirement benefits.[9] Eligibility, in turn, was based upon other factors, including the number of years the individual has worked and contributed to the Social Security fund. The Court concluded that "[i]ndividuals who are over the age of sixty-five and not receiving social security retirement benefits are treated differently than individuals over the age of sixty-five and receiving social security benefits." *Mer-*

---

7. Prior to *Merrill*, Subsection (5) of Utah Code section 34A–2–413 provided in relevant part: Notwithstanding the minimum rate established in Subsection (2), the compensation payable by the employer, its insurance carrier, or the Employers' Reinsurance Fund, after an employee has received compensation from the employer or the employer's insurance carrier for any combination of disabilities amounting to 312 weeks of compensation at the applicable total disability compensation rate, shall be reduced, to the extent allowable by law, by the dollar amount of 50% of the Social Security retirement benefits received by the employee during the same period.
Utah Code Ann. § 34A–2–413(5) (2005).

8. The uniform operation of laws provision of the Utah Constitution states: "All laws of a general nature shall have uniform operation." UTAH CONST. art. I, § 24. The Utah Supreme Court recognizes that Utah's uniform operation of laws provision is "substantially parallel" to the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *Merrill*, 223 P.3d at 1092.

9. Age is not a suspect classification; statutes that create classifications based on age are analyzed under a rational basis review. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313–14, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (rational basis was proper standard by which to test whether state law requiring uniformed state police officers to retire at age 50 violated equal protection).

*rill*, 223 P.3d at 1094.[10]

In response, Employer points out the courts of our sister states have upheld a 100% offset for Social Security retirement benefits or outright termination of disability benefits at retirement in the face of an equal protection challenge. *See, e.g., Satterlee v. Lumberman's Mutual Casualty Co.*, 353 Mont. 265, 222 P.3d 566 (2009); *Rayhall v. Akim Co., Inc.*, 263 Conn. 328, 819 A.2d 803 (2003); *McDowell v. Jackson Energy RECC*, 84 S.W.3d 71 (Ky.2002); *Case of Tobin*, 424 Mass. 250, 675 N.E.2d 781 (1997); *Harris v. Department of Labor and Industries*, 120 Wash.2d 461, 843 P.2d 1056 (1993); and *Brown v. Goodyear Tire & Rubber Co.*, 3 Kan.App.2d 648, 599 P.2d 1031 (1979).

We decline to adopt the reasoning in *Merrill*. We disagree with its analysis. In any case, the Utah statute it considered is different from the Pennsylvania statute in critical ways, making *Merrill's* analysis of limited value even were we inclined to adopt it.

First, we disagree with the Utah Supreme Court's identification of the legislative classification, which gives age 65 central significance. Individuals are eligible for Social Security retirement benefits when they reach age 62, although they are reduced. 42 U.S.C. § 402(a).[11] Individuals born between 1943 and 1954 do not reach full retirement age until age 66, and those born after 1960 must wait until they reach age 67. 42 U.S.C. § 416(*l*)(1).[12] In-

---

**10.** Claimant also directs this Court's attention to several other state courts that struck down Social Security offsets on equal protection grounds. *See, e.g., Reesor v. Montana State Fund*, 325 Mont. 1, 103 P.3d 1019 (2004); *Wal–Mart Stores, Inc. v. Keel*, 817 So.2d 1 (La.2002); *Golden v. Westark Community College*, 333 Ark. 41, 969 S.W.2d 154 (1998); *State ex rel. Boan v. Richardson*, 198 W.Va. 545, 482 S.E.2d 162 (1996); and *Industrial Claim Appeals Office of the State of Colorado v. Romero*, 912 P.2d 62 (Colo.1996). Claimant asserts that the common thread in these cases and *Merrill* is the premise that the purposes of workers' compensation and Social Security retirement benefits are not the same and, therefore, there is no duplication of benefits to be prevented by an offset.

One of the cases cited by Claimant has been called into doubt by changes in state law. In *State ex rel. Beirne v. Smith*, 214 W.Va. 771, 591 S.E.2d 329, 333–34 (2003), the Supreme Court of Appeals of West Virginia upheld the constitutionality of a provision in its Workmen's Compensation Law terminating disability benefits for permanently and totally disabled workers once they reach age 65. The Court noted that in its earlier decision in *Boan*, 198 W.Va. 545, 482 S.E.2d 162, it had rejected the state's argument that a 50% offset was appropriate because Social Security and disability benefits are duplicative of one another. In *Beirne*, the state offered a new rationale which the Court accepted: protect-

ing the solvency of the fund. *Id.* at 336. The *Beirne* court also noted that the offset found unconstitutional in *Boan* had since been removed. *Id.* at 335 n. 9, 482 S.E.2d 162.

**11.** Section 402(a) of the Social Security Act states, in relevant part:

> Every individual who—
> (1) is a fully insured individual (as defined in section 414(a) of this title),
> (2) has attained age 62, and
> (3) has filed application for old-age insurance benefits or was entitled to disability insurance benefits for the month preceding the month in which he attained retirement age (as defined in section 416(*l*) of this title),
> shall be entitled to an old-age insurance benefit....

42 U.S.C. § 402(a). *See also* 20 C.F.R. § 404.312 (describing how a beneficiary's benefit amount is calculated).

**12.** Section 416(*l*)(1) states:

> The term "retirement age" means—
> (A) with respect to an individual who attains early retirement age (as defined in paragraph (2)) before January 1, 2000, 65 years of age;
> (B) with respect to an individual who attains early retirement age after December 31, 1999, and before January 1, 2005, 65 years of age plus the number of months in

dividuals may also elect to delay retirement until as late as age 70 in order to collect delayed retirement credits. 42 U.S.C. § 402(w).[13] In short, attaining the age of 65 is not dispositive to determining whether Section 204(a) creates a legislative classification.

Second, *Merrill* rested on the premise that the purpose of workers' compensation and Social Security are not the same. From this premise, the Utah Supreme Court reasoned that because the benefits are not duplicative, no valid governmental interest is served by an offset. As discussed later in this opinion, however, the Pennsylvania Supreme Court rejected a similar argument in *Kramer* that severance benefits and workers' compensation benefits are not duplicative.

Third, Section 204(a) contains an exception to the offset not found in the Utah law considered in *Merrill.* Section 204(a) provides that "the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable

injury." 77 P.S. § 71(a). Thus, Section 204(a), unlike the Utah statute, creates two classes: (1) individuals to whom the offset does not apply because they are already receiving Social Security retirement benefits at the time they sustain a compensable injury and (2) individuals to whom the offset does apply because they sustained a compensable injury before they began collecting Social Security retirement benefits. This is a chasm between the Utah and Pennsylvania statutory schemes that, simply, makes *Merrill* inapposite.

Having established that Section 204(a) creates a legislative classification, the appropriate standard of review under an equal protection analysis depends upon the type of interest affected by the classification. *McCusker v. Workmen's Compensation Appeal Board (Rushton Mining Company)*, 536 Pa. 380, 385, 639 A.2d 776, 778 (1994). As our Supreme Court has explained:

> Generally speaking, there are three different types of classifications calling for

---

the age increase factor (as determined under paragraph (3)) for the calendar year in which such individual attains early retirement age;
(C) with respect to an individual who attains early retirement age after December 31, 2004, and before January 1, 2017, 66 years of age;
(D) with respect to an individual who attains early retirement age after December 31, 2016, and before January 1, 2022, 66 years of age plus the number of months in the age increase factor (as determined under paragraph (3)) for the calendar year in which such individual attains early retirement age; and
(E) with respect to an individual who attains early retirement age after December 31, 2021, 67 years of age.
42 U.S.C. § 416(*l*)(1). *See also* 20 C.F.R. § 404.409 (table listing full retirement ages based upon year of birth).

**13.** Section 402(w), titled "increase in old-age insurance benefit amounts on account of delayed retirement," states, in pertinent part:

(1) The amount of an old-age insurance benefit ... which is payable without regard to this subsection to an individual shall be increased by—
(A) the applicable percentage (as determined under paragraph (6)) of such amount, multiplied by
(B) the number (if any) of the increment months for such individual.
(2) For purposes of this subsection, the number of increment months for any individual shall be a number equal to the total number of the months—
(A) which have elapsed after the month before the month in which such individual attained retirement age (as defined in section 416(*l*) of this title) or (if later) December 1970 and prior to the month in which such individual attained age 70. . . .
42 U.S.C. § 402(w). *See also* 20 C.F.R. § 404.313.

three different standards of review: (1) classifications which implicate a suspect class or a fundamental right are strictly construed in light of a compelling governmental purpose; (2) classifications which implicate an important though not a fundamental right or a sensitive classification are assessed under a heightened standard of scrutiny which seeks an important governmental purpose; and (3) classifications which involve none of these classes or rights are upheld if there is any rational basis for the classification.

*Kramer,* 584 Pa. at 334, 883 A.2d at 533 (citing *Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988)). Our Supreme Court has held that judicial review of government regulation of social welfare benefits, such as workers' compensation, is deferential. *McCusker,* 536 Pa. at 388, 639 A.2d at 779. Therefore, a statutory classification in the area of social welfare is consistent with equal protection if it meets the rational basis test. *Kramer,* 584 Pa. at 335, 883 A.2d at 534 (citing *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971) and *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)).

 A legislative classification subjected to rational basis scrutiny begins with a strong presumption of validity. *Kramer,* 584 Pa. at 335, 883 A.2d at 534. Pennsylvania courts employ a two-step analysis when applying the rational basis test:

> [F]irst, we determine whether the challenged statute seeks to promote any legitimate state interest or public value;

and if so, we then determine whether the legislative classification is reasonably related to accomplishing that articulated state interest.... This deferential standard recognizes the legislative prerogative to "define the scope and the duration of the entitlement to ... benefits, and to increase, decrease, or to terminate those benefits based on its appraisal of the relative importance of the recipients' needs and the resources available to fund the program." *Bowen v. Gilliard,* 483 U.S. 587, 598, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987); *McCusker,* 639 A.2d at 780. A state regulation in this area will not be deemed to violate equal protection merely because the classification drawn is imperfect.... The classification "need only be directed at the accomplishment of a legitimate governmental interest, and to do so in a manner which is not arbitrary or unreasonable." *McCusker,* 639 A.2d at 781.

*Id.* at 335–36, 883 A.2d at 534 (citations omitted).

 Our Supreme Court has, as Employer points out, already identified one legitimate governmental interest underlying all of the offsets in Section 204(a): "Reasonable workers' compensation cost containment for employers, and the concomitant competitive benefit such cost containment offers for Pennsylvania businesses." *Id.* at 337, 883 A.2d at 535.[14] We identify a second legitimate governmental interest to this particular offset: to encourage individuals collecting Social Security retirement benefits to remain in or reenter the workforce.[15] Against these ar-

---

14. The Utah Supreme Court expressly rejected cost containment as a legitimate governmental objective of a Social Security offset. *Merrill,* 223 P.3d at 1095. This is a critical distinction from our own Supreme Court's jurisprudence and another reason we decline to follow *Merrill.*

15. Under a rational basis analysis, the General Assembly need not specifically articulate the purpose or rationale supporting its action. It is enough that some rationale may conceivably be the purpose and policy underlying the enactment. *Kramer,* 584 Pa. at 336, 883 A.2d at 534 (citations omitted). Thus, the courts

ticulated governmental interests, we consider whether the legislative classification created in Section 204(a) is reasonably related to those interests.

■ Permitting an employer to offset workers' compensation disability benefits by 50% of an employee's Social Security retirement benefit is reasonably related to reducing the employer's workers' compensation costs. If the employer is self-insured, the reduction is obvious because it is direct. Every dollar offset is a dollar in savings to the employer. The cost reduction to privately insured employers is less direct; however, workers' compensation insurance premiums "are based at least in part on past payment experience." *Kramer,* 584 Pa. at 338, 883 A.2d at 535–36. Reducing the amount of compensation claims ameliorates the employer's future premiums. Thus, whether an employer is self-insured or privately insured, it will benefit by the offset.

Claimant counters that the offset is not reasonable because workers' compensation benefits and Social Security retirement benefits serve different purposes: workers' compensation provides an exclusive remedy for injuries while Social Security provides a pension for individuals who fulfill age and other eligibility requirements. The programs compute benefits on different bases and neither are solely wage replacement schemes. Therefore, the two types of benefits are not duplicative, and one should not offset the other.

The Pennsylvania Supreme Court considered, and rejected, a similar argument lodged by the claimant in *Kramer* against the severance offset in Section 204(a). The Court explained that

there is nothing irrational or arbitrary in offsetting severance benefits, irrespective of whether the employer is self-insured or privately insured. *The worker experiences only one loss of earnings at a time, even if there is a prospect of compensation for that loss from multiple sources. The offset does not disadvantage the injured worker vis a vis his uninjured colleagues who also receive severance benefits* because those workers do not receive a double benefit, in the form of workers' compensation payments, from the employer. Because the employment relationship is the basis for providing both severance payments and workers' compensation benefits (whether or not the compensation is paid through an outside insurer), the employer can avoid paying duplicate benefits for the same loss of earnings by using the offset. We conclude that the severance benefit offset bears a rational relationship to achieving the legislative goals.

*Id.* at 338, 883 A.2d at 535 (emphasis added).

The Supreme Court's above-stated rationale is equally applicable to this case. The employment relationship is the basis for providing both workers' compensation benefits and Social Security retirement benefits. The latter benefit is traceable to the Social Security tax contribution every employer makes toward its employees' social security retirement. The General Assembly recognized that the employer's contribution is only partial by enacting a 50% offset rather than a dollar for dollar offset. The 50% offset is not a perfect fit because a claimant may have a long work history with multiple employers. In such a case, the last employer would benefit even

are free to hypothesize reasons why the legislature created the particular classification at issue and, if some legitimate reason exists, the provision cannot be struck down, even if its soundness or wisdom might be deemed questionable. *Id.* (citations omitted).

918

though it was not the employer that made all of the contributions to the Social Security trust fund on behalf of the employee. Legislative classifications are not required to be perfect to pass constitutional muster.

The General Assembly chose a 50% offset as a fair approximation of the employer's contribution because of the burden to tailor the offset in each individual case to the actual Social Security tax contributions made by an employer for the employee subject to the offset. Further, former employers will benefit by having the offset apply where they, in turn, have a short history with an employee who is injured and then retires. The goal of the 50% offset is to achieve fairness to the group of all Pennsylvania employers. Statutory regulation of social welfare benefits "does not violate the Equal Protection Clause because the classifications drawn are imperfect; if the classification has a reasonable basis, it does not offend the Constitution." *McCusker*, 536 Pa. at 388, 639 A.2d at 780. It is not for this Court to speculate as to whether Section 204(a)'s 50% offset is the wisest or best means to accomplish the legitimate legislative goal of cost containment.

■ Indeed, there are an infinite array of policy choices the legislature could have made with respect to workers' compensation benefits. It could have decided that workers' compensation disability, which is intended to replace an injured worker's earning power, should end as soon as that employee retires. After all, other employees, who are not injured before retirement, are limited to their Social Security and retirement pension. In its wisdom, however, the legislature has decided that workers' compensation should continue post-retirement, recognizing that many retirees wish to work well into their retirement. So long as a work injury deprives the claimant of the opportunity to earn income, compensation benefits continue. Only where an employee evidences an intention to withdraw from the workplace does compensation terminate. *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson)*, 543 Pa. 74, 79, 669 A.2d 911, 913 (1995).

Finally, we consider whether the challenged offset is reasonably related to the second governmental interest identified here, *i.e.,* to encourage individuals already collecting Social Security retirement benefits to remain in or reenter the workforce. They can do so knowing that if they sustain a disabling work injury, they will receive compensation for that loss of income. Their expectation that their post-retirement earning will augment their Social Security retirement benefit will be met. Section 204(a) is reasonably related to the goal of encouraging citizens to work post-retirement because the offset "shall not apply if old age Social Security benefits were received prior to the compensable injury." 77 P.S. § 71(a).

Thus, a retired worker who has already begun collecting Social Security retirement benefits can continue to work knowing that if he subsequently sustains a compensable work injury his disability benefit will be unaffected by his Social Security income, which could be substantial if the employee is like most individuals age 62 or over who have contributed to the Social Security fund for decades. The exception to the Section 204(a) Social Security offset also comports with the goal of the Senior Citizens' Freedom to Work Act of 2000, Pub.L. 106–182, 114 Stat. 199, which amended Section 403 of the Social Security Act, 42 U.S.C. § 403, to eliminate deductions in Social Security retirement benefits "with respect to the earnings of any individual in any month beginning with the

month in which the individual attains retirement age." 42 U.S.C. § 403(f)(8)(E).

In summary, we hold that the offset against disability benefits in Section 204(a) of the Act, 77 P.S. § 71(a), for 50% of an individual's Social Security retirement benefit is reasonably related to the legitimate governmental objectives of reducing workers' compensation costs for Pennsylvania employers and encouraging Social Security beneficiaries to participate in the workforce. Accordingly, we reject Claimant's equal protection challenge and affirm the order of the Workers' Compensation Appeal Board denying her offset review petition.

## ORDER

AND NOW, this 5th day of January, 2012, the order of the Workers' Compensation Appeal Board dated January 14, 2010, in the above-captioned matter is hereby AFFIRMED.