# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Nowakowski, : 
            : 
        Petitioner : 
            : 
        v. : No. 1167 C.D. 2016
            : Submitted: November 10, 2016
Unemployment Compensation : 
Board of Review, : 
            : 
        Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                **FILED:  April 21, 2017**


David Nowakowski (Claimant) petitions, *pro se*, for review of an order of the Unemployment Compensation Board of Review (Board) finding him ineligible for unemployment compensation benefits under Section 401(a)(2) of the Unemployment Compensation Law (Law)[1] because less than 49.5% of Claimant's

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(a)(2).  Section 401(a)(2) was recently amended by the Act of November 3, 2016, P.L. 1100, and now requires that a claimant show that 37% or more of his base year wages were paid outside of the highest earning quarter.  This amendment, however, applies only to benefit years that begin *after* December 31, 2016.  *Id.*, § 14(1)(i).  Claimant applied for benefits in April 2016 and therefore his benefit year would have begun in that month.  *See* Section 4(b) of the Law, 43 P.S. § 753(b).  Consequently, the amended version of Section 401 is inapplicable to Claimant, and we rely on the provision in effect from January 1, 2013 to November 2, 2016.

total base year wages were paid outside of his highest earning quarter. For the reasons set forth below, we affirm.

Claimant began working at E. E. Austin & Son (Employer) as a Project Engineer in July 2015 and his last day of employment was on January 22, 2016. Claimant filed his initial claim for unemployment compensation benefits on April 7, 2016. (Record Item (R. Item) 1, Claim Record.) On April 11, 2016, the Unemployment Compensation Service Center issued a Notice of Financial Determination finding Claimant ineligible for benefits pursuant to Section 401(a)(2). (R. Item 2, Notice of Financial Determination.) Claimant appealed the determination and a hearing was held before the Referee on May 5, 2016 at which Claimant and a manager for Employer testified.

Following the hearing, the Referee issued a decision and order on May 9, 2016 affirming the Service Center's determination that Claimant was ineligible for unemployment compensation benefits. (R. Item 8, Referee Decision and Order.) In the decision, the Referee found that Claimant's base year of employment included the four quarters of 2015 and that Claimant had no wages in the first and second quarters, $12,740 in the third quarter and $19,471 in the fourth quarter, with a total base year wages of $32,211. (*Id*., Findings of Fact ¶¶2-6.) On the basis of the fact that $19,471 of wages were paid in his highest quarter and only $12,740 in the other three quarters, the Referee concluded that Claimant did not satisfy the requirement that 49.5% or more of his qualifying wages were paid outside of the quarter in which he had the highest wages and he therefore was ineligible for unemployment compensation benefits under the Law. (*Id*., Reasoning at 3, Order.)

Claimant appealed to the Board, and, on June 21, 2016, the Board issued an order affirming the Referee's decision and order. (R. Item 11, Board

2

Order.) The Board adopted the Referee's findings of fact and conclusions and concluded the Referee's determination was proper under the relevant provisions, further stating that it had no discretion in determining if a claimant meets the financial qualifications for benefits set forth in the Law and its implementing regulations. (*Id.*) Claimant thereafter petitioned this Court for review of the Board's decision and order.[2]

On appeal, Claimant does not challenge the Referee's findings of fact adopted by the Board regarding his base year wages or the Referee's and Board's determination that his earnings from the three quarters of his base year aside from his highest earning quarter were less than 49.5% of his total base year earnings. Claimant does not dispute that the Referee and Board properly applied the version of Section 401(a)(2) in effect at the time of Claimant's application for benefits to determine that he was ineligible for benefits. Claimant also does not argue that the 49.5% figure of total base year wages that has to paid outside of the highest earning quarter, which was lowered to 37% in the 2016 amendment of Section 401(a)(2), is too high of a percentage. Instead, Claimant argues that the determination by the Board violated the equal protection clause of the Fourteenth Amendment of the United States Constitution because, while the state has a legitimate state interest in ensuring that individuals who apply for unemployment compensation benefits are genuinely attached to the labor force, the computation of eligibility based on a comparison of wages earned in calendar quarters discriminates among claimants based on the days of the week that they receive

---

[2] Our scope of review of the Board's decision is limited to determining whether errors of law were committed, constitutional rights or agency procedures were violated, and necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704; *Pagliei v. Unemployment Compensation Board of Review*, 37 A.3d 24, 25 n.7 (Pa. Cmwlth. 2012).

payment, which are not always consistently distributed among the quarters of a year. We reject this argument.

In unemployment compensation matters, the claimant bears the burden of proving financial eligibility for unemployment benefits. *Pagliei v. Unemployment Compensation Board of Review*, 37 A.3d 24, 26 (Pa. Cmwlth. 2012); *Jackson v. Unemployment Compensation Board of Review,* 933 A.2d 155, 157 (Pa. Cmwlth. 2007). The financial eligibility requirements are set forth in Section 401(a) and Section 404 of the Law, 43 P.S. §§ 801(a), 804, and are calculated based upon the wages earned during the claimant's "base year," which is defined as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." Section 4(a) of the Law, 43 P.S. § 753(a). The "calendar quarter" used to determine the base year is the "period of three consecutive calendar months ending on March thirty-first, June thirtieth, September thirtieth or December thirty-first, or the equivalent thereof." Section 4(d) of the Law, 43 P.S. § 753(d). For the purpose of computing base year wages, wages are allocated to the quarter in which they are paid to the claimant by the employer, rather than to the quarter in which the work was performed. Section 4(x) of the Law, 43 P.S. § 753(x) ("'Wages' means all remuneration...paid by an employer to an individual with respect to his employment..."); 34 Pa. Code § 61.3(a)(1) ("Wages are considered paid on the date when the employer actually pays them."); *Wooley v. Unemployment Compensation Board of Review*, 454 A.2d 224, 225 (Pa. Cmwlth. 1983).[3]

---

[3] An exception to this rule exists where the employer delays or moves forward payment from the regular payday. 34 Pa. Code § 61.3(a)(2); *Gibson v. Unemployment Compensation Board of Review*, 682 A.2d 422, 424 (Pa. Cmwlth. 1996).

Section 404 establishes the manner in which unemployment compensation benefits shall be calculated for an eligible employee and sets forth the rates of compensation benefits. 43 P.S. § 804. The version of Section 401(a) in effect at the time of Claimant's application for benefits provided:

> Compensation shall be payable to any employe who is or becomes unemployed, and who—
>
> (a) Satisfies both of the following requirements:
>
> (1) Has, within his base year, been paid wages for employment as required by section 404(c) of this act.
>
> (2) Except as provided in section 404(a)(3), not less than forty-nine and one-half per centum (49.5%) of the employe's total base year wages have been paid in one or more quarters, other than the highest quarter in such employe's base year.

Former 43 P.S. § 801(a).[4]

The Equal Protection clause of the Fourteenth Amendment requires that state officials treat all similarly situated individuals alike. *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corp.)*, 883 A.2d 518, 532 (Pa. 2005); *Curtis v. Kline*, 666 A.2d 265, 267 (Pa. 1995). The right to equal protection, however, "does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment and does not require equal treatment of people having different needs." *Kramer*, 883 A.2d at 532 (quoting *Curtis*, 666 A.2d at 267). "The prohibition against treating people

---

[4] Claimant does not argue that the exception of Section 404(a)(3) of the Law – which in certain circumstances allows claimants whose base year wages are insufficient to qualify for the weekly benefit rate determined by the highest qualifying wages set forth in the table in Section 404(e)(1) to step down to the two lower weekly benefit rates on the table – is applicable to him.

differently under the law does not preclude the Commonwealth from resorting to legislative classifications provided that those classifications are reasonable rather than arbitrary and bear a relationship to the object of the legislation." *Kramer*, 883 A.2d at 532 (quoting *Curtis*, 666 A.2d at 268).

To determine whether a classification is justified, we must first determine the appropriate standard of review, which depends on the type of classification at issue in the case. *Caputo v. Workers' Compensation Appeal Board (Commonwealth)*, 34 A.3d 908, 915 (Pa. Cmwlth. 2012) (*en banc*); *Larsen v. State Employees' Retirement System*, 22 A.3d 316, 325 (Pa. Cmwlth. 2011). As our Supreme Court has explained:

> Generally speaking, there are three different types of classifications calling for three different standards of review: (1) classifications which implicate a suspect class or a fundamental right are strictly construed in light of a compelling governmental purpose; (2) classifications which implicate an important though not a fundamental right or a sensitive classification are assessed under a heightened standard of scrutiny which seeks an important governmental purpose; and (3) classifications which involve none of these classes or rights are upheld if there is any rational basis for the classification.

*Kramer,* 883 A.2d at 533. Classifications of claimants related to financial eligibility for unemployment compensation benefits have traditionally been determined to require only the minimal, rational basis level of scrutiny. *Martin v. Unemployment Compensation Board of Review,* 466 A.2d 107, 113-14 (Pa. 1983); *Devine v. Unemployment Compensation Board of Review*, 101 A.3d 1235, 1238 (Pa. Cmwlth. 2014).

A legislative classification subjected to a rational basis scrutiny begins with a strong presumption of validity. *Kramer*, 883 A.2d at 534; *Caputo*, 34 A.3d

6

at 916.  Pennsylvania courts employ a two-step analysis when applying the rational basis test:  first, the court must determine whether the challenged provision seeks to promote any legitimate state interest or public value; if so, the court must then determine whether the classification is reasonably related to accomplishing that articulated state interest or interests.  *Curtis*, 666 A.2d at 269; *Caputo*, 34 A.3d at 916.  A legislative classification subject to rational basis scrutiny will not be adjudged to violate equal protection merely because the classification that is drawn is imperfect.  *Kramer*, 883 A.2d at 534; *Caputo*, 34 A.3d at 916; *see also Clements v. Fashing*, 457 U.S. 957, 962-63 (1982) ("The Equal Protection Clause allows the States considerable leeway to enact legislation that may appear to affect similarly situated people differently.").

Our Supreme Court rejected a similar equal protection challenge to the financial eligibility requirements of the Law in *Martin*.  In *Martin*, the claimant challenged the different treatment given to employees with a highest quarterly earnings over $3,738, who only had to earn 20% of their wages in the other three quarters of their base year outside their highest quarter, from employees, like the claimant in *Martin*, with highest quarterly earnings less than $3,738, who had to earn 35 to 38% of their wages outside the highest quarter.  466 A.2d at 108.  Noting U.S. Supreme Court precedent applying the minimum level of scrutiny in cases related to unemployment compensation benefit qualification statutes, the Court first determined that the financial eligibility at issue, even if based on an applicant's wealth as argued by the claimant, did not involve a suspect or sensitive qualification and therefore the rational basis scrutiny applied.  *Id*. at 113-14 (citing *Ohio Bureau of Unemployment v. Hodory*, 431 U.S. 471 (1977)).

The Court in *Martin* concluded that the "general purpose" behind the requirement that a claimant earn a percentage of the base year earnings outside the

7

highest quarter as a criterion for eligibility is that it acts as a "statistical surrogate for direct evidence of time worked." 466 A.2d at 114. According to the Court, this evidence of time worked serves three functions: excluding new entrants to the work force who do not suffer loss upon discharge, ensuring that the right to benefits vests and contributions were made on the worker's behalf after a certain period of time and demonstrating recent work history that shows that the claimant will continue to be attached to the workforce. *Id.* The Court explained:

> [v]arious methods have been adopted in the numerous jurisdictions which require claimants to earn a percentage of qualifying wages outside their highest quarter as an alternative measure for actual time worked because of the difficulty of obtaining accurate statistics for the latter. All such methods are only rough measures of time actually worked, since the amount of a claimant's earnings in any period is a function of both time and rate of compensation. They have, nevertheless, survived constitutional challenge. Thus, the rational relationship between the requirement that a claimant earn a percentage of income outside the highest quarter to a legitimate government interest is not disputed.

*Id.* at 114-115 (citation omitted). The *Martin* Court held that while the "statutory scheme results in some unequal treatment between similarly situated claimants," this did not amount in an equal protection violation. *Id.* at 118. As the Court stated:

> inequities in the distribution of benefits are an unfortunate concomitant of complex economic-social welfare legislation which must ultimately reflect a balance between legislative efforts to eliminate an evil, e.g., the debilitating effects of unemployment, administrative realities and the problem of allocating scarce financial resources in a complex society. The resolution of such conflicting interests is peculiarly adapted to the legislative process.

8

*Id*. at 119.

This Court also rejected an equal protection challenge to the financial eligibility requirements of the Law in *Devine*.  In that case, the claimant, whose primary income was derived from work in catering and food services at a minor league baseball stadium, was denied benefits under Section 401(a)(2) because less than 49.5% of her base year earnings were not from outside her highest earning quarter.  101 A.3d at 1236.  The claimant argued that, while her wages were primarily earned during the baseball season, she was a year-round employee who worked other events throughout the year and she was therefore not within the seasonal employee class that the General Assembly was attempting to exclude when it adopted the 49.5% requirement of Section 401(a)(2).  *Id*. at 1237-38.  Invoking the equal protection clause, the claimant argued that Section 401(a)(2) was arbitrary and unfair when applied to her and she was entitled to have her financial eligibility determined before the 2012 amendments to Section 401(a)(2) that raised the non-highest earning quarter requirement to 49.5% or a determination of her benefits level based on an average of the 52 weeks of base year earnings.  *Id*. at 1238.  After reviewing *Martin*, we rejected the argument that the financial eligibility requirements of the Law as applied to the claimant are unconstitutional, noting that "Sections 401 and 404 of the Law are explicit and leave no room for a more flexible, compassionate interpretation."  *Id*. at 1238-39.

Though Claimant's equal protection challenge to the financial eligibility requirements of the Law is not identical to the challenges in *Martin* and *Devine*, we find the challenge here to be equally defective as in those cases. Claimant's equal protection argument is premised on the comparison of wages by calendar quarters to determine financial eligibility under Section 401(a)(2), which Claimant asserts irrationally classify applicants for benefits based upon the day of

9

the week that they receive their pay, as the number of weekdays varies among quarters. Claimant illustrates this argument with the example of an applicant for benefits who worked an equal amount of days at an equal rate of pay over the first two quarters of 2015 with all payment received during those two quarters. If the applicant was paid weekly on Fridays, he would have 13 paydays in each of these two quarters and would receive 50% of his qualifying wages in the highest earning quarter and 50% outside of the highest earning quarter. The applicant would thus be eligible for benefits under Section 401(a)(2) because he would have at least 49.5% of his pay among the three base year quarters when he did not receive the most qualifying wages. If the applicant was paid weekly on Wednesdays, however, he would have 12 paydays during the first quarter of 2015 and 13 during the second quarter, which would result in an unbalanced distribution of wages among the two quarters and would lead to the applicant being disqualified under Section 401(a)(2) for not having 49.5% or more of wages outside the highest earning quarter. Claimant asserts that this imbalance in receipt of wages can be even greater for recipients of bi-weekly pay checks depending on the day of the week they receive payment. Claimant contends that by not taking into consideration the variations created by the payday schedules when comparing wages paid between quarters to determine financial eligibility for benefits, the General Assembly created a classification system based on paydays with no rational relationship to the state interest of ensuring employment throughout the year.

Claimant's argument does not show an unconstitutional infirmity in the Law. It is well-established that the financial eligibility requirements of the Law serve the legitimate legislative purpose as a means to demonstrate a claimant's genuine attachment to the labor force. *Poola v. Unemployment*

10

*Compensation Board of Review,* 555 A.2d 97, 99 (Pa. 1989); *Lopata v. Unemployment Compensation Board of Review,* 493 A.2d 657, 661 (Pa. 1985); *Martin*, 466 A.2d at 114-15; *Devine*, 101 A.3d at 1238. The Court explained in *Martin* that the requirement of Section 401(a)(2) that a certain amount of wages must be paid outside the highest earning quarter of the base year is rationally related to this legislative goal because it demonstrates a history of work stretching beyond one quarter, a durable attachment to the labor market and a history of contributions to the unemployment compensation system. 466 A.2d at 114-15. While Claimant has demonstrated that some potential claimants could be unfairly affected by the different numbers of days of the week during calendar quarters, he has not shown that his eligibility for benefits was personally affected by the use of calendar quarters to determine financial eligibility under Section 401(a)(2). More importantly, though, the fact that the calendar quarter system of Section 401(a)(2) is only a "rough measure[] of time actually worked" does not mean that it violates the equal protection clause. *Id*. at 115; *see also Kramer*, 883 A.2d at 534; *Caputo*, 34 A.3d at 916. "[A] legislative scheme designed to achieve a legitimate public purpose should not be found unconstitutional because it falls short of perfect justice." *Martin*, 466 A.2d at 119.

Accordingly, the order of the Board is affirmed.


_____
**JAMES GARDNER COLINS, Senior Judge**

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Nowakowski, :
:
Petitioner :
:
v. : No. 1167 C.D. 2016
:
Unemployment Compensation :
Board of Review, :
:
Respondent :

## ORDER

AND NOW, this 21st day of April, 2017, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**