Susan GIBSON, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted May 31, 1996 .
Decided Sept. 4, 1996.

Susan Gibson, Pro Se, Petitioner.

Sarah C. Yerger, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for Respondent.

Before DOYLE and FLAHERTY, JJ., and LORD, Senior Judge.

DOYLE, Judge.

Susan Gibson appeals from an order of the Unemployment Compensation Board of Review (Board) which affirmed a Referee's decision finding Gibson financially ineligible for unemployment compensation benefits under Section 404(a)(3) of the Unemployment Compensation Law (Law).[1]

Gibson was last employed as an energy assistance worker at the Clinton County Assistance Office (Employer) and her last day of work was April 14, 1995.[2]

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 804(a)(3).

2. The reason for Gibson's separation from work is not at issue in this appeal.

Gibson filed an application for benefits with the job center effective June 19, 1995,[3] thereby establishing a base year period consisting of January 1, 1994 through December 13, 1994.[4] The job center issued a notice of financial determination dated June 22, 1995 finding Gibson earned the following wages in her base year:

| | |
|---|---|
| First Quarter 1994 | $6,243 |
| Second Quarter 1994 | $1,015 |
| Third Quarter 1994 | $ 0 |
| Fourth Quarter 1994 | $1,773 |

(Record Item No. 3.)

Significantly, the job center included in Gibson's first quarter wages a $952 payment made on March 31, 1994.

Financial eligibility for benefits is determined by comparing the claimant's highest quarter earnings during his or her base year with the claimant's total base year earnings. Section 404(e)(1) of the Law, 43 P.S. § 804(e)(1). Here, Claimant's highest quarterly earnings were determined by the job center to be $6,243 and her total base year earnings were calculated to be $9,032. Because Section 404(e)(1) requires a claimant with high quarter earnings of $6,243 to have minimum base year wages of $10,000 to qualify for benefits, the job center determined that Claimant was financially ineligible.

Gibson appealed to the Referee arguing that the job center improperly included the $952 March 31, 1994 payment in her first quarter wages. Specifically, she contended that she was routinely paid on alternate Fridays, and the Employer arbitrarily chose to pay Gibson and her co-workers on March 31, 1994, the Thursday before Good Friday. Therefore, she argues, the March 31, 1994 payment should have been attributed to April 1, 1994, which would have been her regular pay day according to the Employer's policy of paying her on alternate Fridays.

The Referee found, however, that March 31, 1994 was a regular, scheduled pay date as evidenced by a calendar published by Employer and, therefore, affirmed the job center's determination. Thereafter, Gibson appealed to the Board which affirmed. The instant appeal followed.

■ On appeal,[5] Gibson argues that the Board erred in failing to allocate the March 31, 1994 wages to the second quarter of her base year pursuant to 34 Pa.Code § 61.3(a). Additionally, she contends that she is the victim of disparate treatment in that her two co-workers were granted unemployment compensation benefits under the *identical* circumstances, *i.e.,* the referee and the Board included the March 31, 1994 payment in the *second* quarter wages of Gibson's two co-workers while the same referee and Board placed Gibson's March 31, 1994 payment in her *first* quarter.[6]

3. The Board's finding that Claimant's application date was June 19, 1994 is clearly a typographical error.

4. *Section 4(a) of the Law, 43 PS. § 753(a),* defines base year as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." Benefit year is "the fifty-two consecutive week period beginning with the day as of which such 'Valid Application for Benefits' is filed...." Section 4(b) of the Law, 43 P.S. § 753(b).

5. Our scope of review over the instant matter is limited to determining whether constitutional rights were violated, an error of law was committed or findings of fact are supported by substantial evidence. *Matusavage v. Unemployment Compensation Board of Review,* 104 Pa.Cmwlth. 37, 521 A.2d 92 (1987).

6. In a decision dated May 26, 1995, Referee Edsell granted unemployment benefits to Sharon Ripka, Claimant's co-worker and former group III employee for Employer, reasoning:

The record is clear that [Ripka's] normal pay date was every other Friday, and that March 31, 1994 is a Thursday.... It is clear here, that the date on which [Ripka] was generally paid by the employer was a Friday and in accordance with regulation 61.3(a) the payment for pay period ending March 18, 1994, which was paid to [Ripka] on March 31, 1994, should properly have been paid to [Ripka] on April 1, 1994.

(Referee's 5/26/96 decision at 2; Claimant's Brief, Appendix 1.)

Additionally, in a decision dated January 12, 1995, the Board reversed a referee's decision and granted benefits to Sandra Orsin, also a group III co-worker of Claimant, reasoning:

Under the regulations of the Office of Employment Security, [Orsin's] wages are deemed paid on the day that the amounts assignable to a payroll are generally paid by employer. That day is every other Friday, including April 1, 1994, despite the fact that the wages were paid on March 31, 1994. The wages paid on March 31, 1994, are properly designated to the second quarter of 1994.

The pertinent Board regulations are found at 34 Pa.Code § 61.3 which provides:

> (a) *Date of payment.* Wages shall be considered to be paid on the day on which amounts definitely assignable to a payroll period are *generally paid* by the employer, even though the wages have not actually been reduced to the possession of the employes. (Emphasis added.)

Therefore, the determinative factor in the instant case is whether Claimant was *generally paid* on March 31 or April 1, 1994.

The ordinary meaning of "generally," as set forth in Webster's Third New International Dictionary 945 (1986), is "in disregard of specific instances and with regard to an overall picture," "on the whole," or "as a rule." And, this Court has construed the term, "paid," as utilized in the provisions of the Law, to mean "received." *See, e.g., Wooley v. Unemployment Compensation Board of Review,* 71 Pa.Cmwlth. 162, 454 A.2d 224 (1983) (holding that the term "paid," as set forth in Section 4(x) of the Law, 43 P.S. § 753(x), means wages which have been *received* by employees and does not encompass wages which have been merely *earned* ).

The undisputed evidence in the instant case, a 1994 employee calendar published by Employer and Claimant's wage records, indicates that group III employees, such as Claimant, *received* paychecks *as a rule* on alternate Fridays throughout 1994, except on three dates: March 31st, November 10th and November 13th.

Therefore, we conclude that Claimant was "generally paid" every other Friday in 1994.

█ Accordingly, the $952 payment on March 31, 1994, a Thursday, should have been attributed to April 1, 1994, a Friday.

(Board's 1/12/95 opinion at 1–2; Claimant's Brief, Appendix 2.)

7. We further note that the Board's and Referee Edsell's denial of benefits to Claimant is wholly inconsistent with their grant of benefits to Claimant's co-workers, Ripka and Orsin. *See supra* note 6.

While an administrative agency may change its position regarding the proper interpretation of its rules and regulations, that agency must first explain, distinguish or overrule any of its own adverse precedent. *Standard Fire Insurance Company v. Insurance Department,* 148 Pa.

Adding the $952 to Claimant's second quarter, we find that Claimant's highest quarterly wage should have been $5,291 (her first quarter in 1994). Section 404(e)(1) requires a claimant with high quarterly earnings of $5,291 to have a total base year minimum of $8,480 to be financially eligible for benefits. As Claimant earned $9,032 in her base year, we hold that she is entitled to benefits.[7]

Order reversed. Case remanded to the Board in order to calculate Claimant's benefits. Jurisdiction relinquished as to the calculation of benefits only.

### *ORDER*

NOW, September 4, 1996, the Order of the Unemployment Compensation Board of Review in the above-captioned case is hereby reversed. The case is remanded for the calculation of unemployment benefits payable to Susan Gibson. Jurisdiction relinquished as to the calculation of benefits to Gibson only.

Cmwlth. 350, 611 A.2d 356 (1992.) Here, in both the Board's decision denying Claimant's benefits as well as the Board's brief to this Court on appeal, **there is a complete absence of any reference,** let alone **explanation,** for its change in position regarding the interpretation of Regulation 61.3(a). Because the Board was required to either explain, distinguish or overrule its prior decisions granting benefits to Claimant's co-workers *under the identical circumstances* of the instant case, its failure to do so constituted a clear error of law.