# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Natalie Schmerin, : 
                 Petitioner : 
  : 
    v. : No. 760 C.D. 2018
  : SUBMITTED: October 19, 2018
Unemployment Compensation : 
Board of Review, : 
                 Respondent : 


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                               FILED: March 22, 2019

Natalie Schmerin (Claimant) petitions for review, *pro se*, of the April 9, 2018 Order of the Unemployment Compensation Board of Review (Board) affirming the decision of a Referee to deny Claimant unemployment compensation (UC) benefits. The Board concluded that Claimant is financially ineligible for UC benefits under Sections 401 and 404 of the Unemployment Compensation Law (Law)[1] because she did not earn sufficient qualifying wages in her base year. We affirm the Board's Order.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 801 and 804. Section 404 of the Law provides that to financially qualify for UC benefits, an employee must have sufficient high-quarter and total qualifying base-year wages in covered employment, as set forth in a table titled "Rate and Amount of Benefits." 43 P.S. § 804. Section 401(a) of the Law establishes two requirements to be financially eligible for benefits; the employee must: (1) be paid wages for employment as required by Section 404(c) of the Law and (2) receive not less than 37% of base-year wages in one or more quarters, other than the highest quarter in the employee's base year. 43 P.S. § 801(a).

**Background**

The University of Pittsburgh (Employer) appointed Claimant on a temporary basis[2] to two positions in its School of Social Work: fellowship coordinator and adjunct professor. Notes of Testimony (N.T.), 12/1/17, at 4-6, 8; Ref.'s Finding of Fact (F.F.) No. 2. Employer offered Claimant the adjunct teaching position in a letter dated July 21, 2016. Record (R.) Item No. 5. The letter stated, "You will be compensated a total of $3,300 to teach during the Fall term [2016], payable in four (4) equal monthly installments." *Id.* The letter further stated, "The terms of this appointment, including your salary, will be based exclusively on the terms set forth in this offer." *Id.*

Throughout these UC proceedings, Claimant has referred to this document as her employment "contract" for the teaching position, wherein she claims that Employer agreed to pay her on the last day of each month. *See* N.T., 12/1/17, at 8; Claimant's Br. at 3, 5-6, 8. However, the document in the record is actually an offer letter. The letter states, "If you wish to accept this offer, please check the line below and sign/date. Return the original signed copy to [the Dean of the School of Social Work] no later than Monday, August 1, 2016." *Id.* The copy of the letter in the record is neither signed nor dated by Claimant. *See id.* Significantly, this letter does not indicate which months constitute the "Fall term," when Claimant would begin teaching, or on which dates Claimant would receive the four monthly wage installments. *See id.*

Claimant's last day of work with Employer was September 13, 2016. N.T., 12/1/17, at 8. Thus, the record establishes that, for whatever reason, Claimant did not

---

[2] According to Claimant, she received her employment assignments through "All Temps," Employer's internal temporary employment service. Claimant's Br. at 7.

maintain her adjunct teaching position with Employer for the full term as indicated in the offer letter.[3]

Claimant filed an application for UC benefits with an effective date of September 17, 2017, thereby establishing a base-year period of April 1, 2016 through March 31, 2017. Bd.'s F.F. No. 1. Employer reported to the Department of Labor and Industry (Department) that it paid Claimant the following gross quarterly wages during her base-year period:

> Second quarter 2016 [(April 1 to June 30, 2016)] = $3,916.25
> Third quarter 2016 [(July 1 to September 30, 2016)] = $9,907.50
> Fourth quarter 2016 [(October 1 to December 31, 2016)] = $494.00
> First quarter 2017 [(January 1 to March 31, 2017)] = $962.50

*Id.* Nos. 2-5.[4] Claimant does not challenge the amounts of these payments. However, there is no explanation in the record as to why she continued to receive wages in 2017 when her last day with Employer was September 13, 2016.[5]

On October 26, 2017, the Department issued a Notice of Financial Determination, finding Claimant financially ineligible for UC benefits under the Law.

---

[3] The Board did not make any factual findings regarding Claimant's separation from employment. In her appellate brief, Claimant argues that the Board "did not acknowledge the precipitating factors that resulted in my employment ending with [Employer]," Claimant's Br. at 8, and attempts to explain what transpired, *id.* at 4-5, 7-9. However, the reason for Claimant's separation from employment is irrelevant to the determination of whether she is financially eligible for UC benefits under the Law.

[4] The "calendar quarter" used to determine a claimant's base year is the "period of three consecutive calendar months ending on March thirty-first, June thirtieth, September thirtieth or December thirty-first, or the equivalent thereof." Section 4(d) of the Law, 43 P.S. § 753(d).

[5] This is particularly confounding, as Claimant states in her appellate brief, "I had hoped to continue receiving work assignments with University of Pittsburgh All Temps[,] but that has not happened after this event." Claimant's Br. at 11. Nonetheless, the fact that Claimant received wages after September 2016 is not dispositive of the issue on appeal.

Not. of Fin. Determ., 10/26/17, at 1.  The Department found that Claimant's highest quarter was the third quarter of 2016, when her wages were $9,907.50, and her total base-year wages were $15,280.25.  *Id.*; *see* R. Item No. 1.  Because Claimant's base-year wages fell below the required amount of $15,734, the Department determined that she was financially ineligible for UC benefits.  Not. of Fin. Determ., 10/26/17, at 1; *see* Bd.'s Order at 2.

Claimant appealed to the Referee, who held a hearing on December 1, 2017.  Claimant appeared *pro se* and testified on her own behalf.  Michael Walawender, a UC tax representative, testified via telephone on behalf of the Department.  Employer did not appear at the hearing.[6]

Claimant testified that Employer paid her every two weeks for the fellowship coordinator position, but paid her on "the last day of each month" for the teaching position.  N.T., 12/1/17, at 8.  Claimant testified that her last day of employment with Employer was September 13, 2016 and that she received her final paycheck on September 30, 2016.  *Id.*  Claimant testified that, pursuant to her contract with Employer, her wages for the teaching position should not have been paid on September 30, 2016, but two weeks later, on October 14, 2016.  *Id.*  As stated earlier, however, Employer's offer letter for the teaching position makes no reference whatsoever to what *dates* Claimant would be paid; it states only that Claimant would be paid in "four (4) equal monthly installments."  R. Item No. 5.

The Referee questioned Claimant about the timing of her pay, as follows:

[Referee]:  So, what was your last day with [Employer]?

---

[6] On November 29, 2017, Employer's counsel sent an e-mail to the Referee, stating, "We have consulted with our client[,] and [Employer] has decided not to participate in this hearing."  R. Item No. 8.

[Claimant]: I believe, in reviewing the records, Your Honor, that it was September 13th[, 2016]. . . . The contract for the teaching [position] indicated I would have been paid the last day of the . . . month, which was September 30th, the paycheck would have been received on October 14th, and that would have been a new quarter.

[Referee]: Okay, so you would have been paid . . . [at] the end of September [for the teaching position], correct?

[Claimant]: That would have been the end of the pay period. I would have received the payment, then, in October.

[Referee]: Okay.

[Claimant]: And, although the [f]ellowship position was ended by my [s]upervisor [on September 13, 2016], I was told I was going to continue teaching and then on the 14th of September, I was told I no longer was [teaching].

[Referee]: Okay. So, this [paycheck] was direct[-]deposited on September 30th?

[Claimant]: Correct.

. . .

[Referee]: . . . Were you paid every two weeks? . . .

[Claimant]: For the [f]ellowship [c]oordinator position, yes. The teaching [position] would have been in four equal payments the last day of each month. . . . And, then you get it the next paycheck.

N.T., 12/1/17, at 8. Claimant testified, however, that she was uncertain whether the last paycheck was for the fellowship position or the teaching position, stating: "I believe the last paycheck did include some hours for the [f]ellowship[,] but I don't know. I thought the last paycheck was for the teaching." *Id.* at 9.

Mr. Walawender testified that before the hearing, he investigated the distribution of Claimant's wages for the third and fourth quarters of 2016. *Id.* at 4. Mr. Walawender

5

compared the earnings listed on Claimant's pay statements to the total earnings on her wage record that Employer reported to the Department and the earnings on both documents matched. *Id.* at 5. He testified that based on the documents he reviewed, "there was no reason to believe that the wages were not reported correctly, and[] . . . [Claimant] had not provided any proof showing that there were wages paid on any other date." *Id.* at 5. He further testified that "under [the Law], . . . we have to rule that the wages are counted and reported on the dates that they are paid." *Id.* According to Mr. Walawender, Claimant's "pay statement [showed] that she was paid on September 30th[, 2016], so that's when the wages must be counted, even though the work may have been performed in another time period." *Id.* at 9.

Following the hearing, the Referee concluded that Claimant failed to satisfy her burden of proving her financial eligibility for UC benefits under the Law. The Referee explained her decision as follows:

> [C]laimant could not provide testimony as to whether the pay statement to which she referred included wages earned only from her contract position and not both positions that she worked in for [Employer]. [C]laimant provided no testimony as to how much money she believed should have been paid out in the next quarter, to establish that moving the money into the next quarter[] would change her eligibility.
>
> . . . [T]he Referee [also] finds that as [C]laimant's [fellowship coordinator] position was ended in the middle of the month, resulting in the pay out of her wages at the end of the month, the Referee can only conclude that [E]mployer's pay schedule was proper, and [Employer] reported [C]laimant's wages as they were paid.

Ref.'s Order, 12/5/17, at 3.

Claimant timely appealed to the Board, which affirmed the Referee's decision. The Board determined:

6

[C]laimant argues [that] one payment she received in the third quarter of 2016 should have contractually been paid in the fourth quarter of 2016 and, if the payment had been received when initially scheduled, she would be financially eligible for benefits. Under [34 Pa. Code § 61.3(a)(1)], wages are generally "considered paid on the date when the employer actually pays them." However, "if payment of wages is delayed, the wages are considered paid on the date when the employer generally pays amounts definitely assignable to a payroll period." [34 Pa. Code § 61.3(a)(2).] This regulation contains no provision for payments received earlier than general, so [C]laimant's argument must fail . . . .

Section 404(e)(l) of the Law[, 43 P.S. § 804(e)(1),] provides that a claimant whose highest quarterly base year wages were $9[,]907.50 qualifies for a weekly benefit allowance of $390.00 if her base year wages were at least $15,734.00. [C]laimant received just $15,280.[2]5 in her base year.

Bd.'s Order, 4/9/18, at 2. Therefore, the Board concluded that Claimant was financially ineligible for UC benefits under Section 401(a) of the Law. Claimant now petitions for review of that decision.[7]

## Issue

Claimant presents one issue for our review: Did the Board err in concluding that Claimant was financially ineligible for UC benefits, where Employer did not pay Claimant in accordance with its employment contract, thereby resulting in certain wages being allocated to the incorrect quarter of Claimant's base year?

## Analysis

A UC claimant has the burden of proving his or her financial eligibility for benefits. *Alla v. Unemployment Comp. Bd. of Review*, 119 A.3d 434, 439 (Pa. Cmwlth. 2015). To be financially eligible for UC benefits, a claimant must satisfy the earnings requirements of Sections 401 and 404 of the Law for his or her base year. *Id.* In

---

[7] Our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

7

applying these statutory provisions, our Court has stated that "Sections 401 and 404 of the Law are explicit and leave no room for a more flexible, compassionate interpretation." *Devine v. Unemployment Comp. Bd. of Review*, 101 A.3d 1235, 1239 (Pa. Cmwlth. 2014).

Claimant contends that Employer paid her final wages for the teaching position on September 30, 2016, two weeks earlier than contracted. She contends that under the employment contract, Employer agreed to pay Claimant in four equal installments. Claimant maintains that her pay periods ended on the last day of each month and that Employer typically paid her two weeks later. According to Claimant, had Employer paid her final teaching wages in accordance with that pay schedule, those wages would have been credited to the fourth quarter of 2016, thus rendering her financially eligible for UC benefits.

Section 4(x) of the Law defines "wages" as "all remuneration . . . paid by an employer to an individual with respect to his [or her] employment." 43 P.S. § 753(x). Generally, "[w]ages are considered paid **on the date when the employer actually pays them**." 34 Pa. Code § 61.3(a)(1) (emphasis added). However, "**if payment of wages is delayed**, the wages are considered paid on the date when the employer generally pays amounts definitely assignable to a payroll period." 34 Pa. Code § 61.3(a)(2) (emphasis added).

It is well settled that the Board may not "ignore, or . . . fail to apply, its own regulation." *Cugini v. Unemployment Comp. Bd. of Review*, 512 A.2d 1169, 1173 (Pa. 1986). Because the regulation at 34 Pa. Code § 61.3 contains no provision for wage payments received **earlier** than expected, the Board interpreted the regulation as requiring that Claimant's September 30, 2016 wages be assigned to the quarter in which she received them, *i.e.*, the third quarter of 2016. Bd.'s Order, 4/9/18, at 2. This Court "must defer to the Board's interpretation of its own regulation unless it is clearly

8

erroneous." *McKnight v. Unemployment Comp. Bd. of Review*, 99 A.3d 946, 949 (Pa. Cmwlth. 2014).

Under subsection (a)(1) of the regulation, the general rule is that "[w]ages are considered paid on the date when the employer actually pays them." 34 Pa. Code § 61.3(a)(1). Subsection (a)(2) of the regulation provides an exception to that rule **only when wages are delayed**, not when wages are paid earlier than anticipated. 34 Pa. Code § 61.3(a)(2). Therefore, based on the plain language of the regulation, we conclude that the Board's interpretation is not erroneous.[8]

Here, Claimant does not dispute that Employer correctly reported Claimant's wages to the Department; she claims only that Employer paid her final wages too early. However, by Claimant's own testimony, her last day of work was September 13, 2016. N.T., 12/1/17, at 8. As the Referee noted, this provides a logical explanation as to why Employer paid Claimant at the end of September. *See* Ref.'s Order, 12/5/17, at 3. Furthermore, the offer letter on which Claimant relies to support her claim that Employer agreed to pay her on the last day of each month makes no mention of the dates she would be paid. *See* R. Item No. 5.

---

[8] We have found only one reported decision in which this Court addressed the "early" payment of wages for purposes of determining a claimant's financial eligibility for UC benefits under the Law. In *Gibson v. Unemployment Compensation Board of Review*, 682 A.2d 422 (Pa. Cmwlth. 1996), this Court concluded that the claimant's wages paid on the last day of the first quarter, a Thursday, should have been deemed to have been paid on Friday, the first day of the second quarter, because the claimant established that he was "generally paid" on Fridays. *Id.* at 424. Critically, at the time *Gibson* was decided, the regulation at 34 Pa. Code § 61.3(a) provided that "[w]ages shall be considered to be paid on the day on which amounts definitely assignable to a payroll period are *generally paid* by the employer, even though the wages have not actually been reduced to the possession of the employes." *Id.* (emphasis in original) (quoting regulation). Under the present version of the Board's regulation, however, consideration of when a claimant's wages are "generally paid" is required only "if payment of wages is **delayed**." 34 Pa. Code § 61.3(a)(2) (emphasis added). Therefore, we conclude that *Gibson* is inapposite here.

## Conclusion

Based on the wages reported by Employer for Claimant's base year, *see* Bd.'s F.F. Nos. 2-5, we agree with the Board that Claimant is financially ineligible for UC benefits under Section 401(a) of the Law.  Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Natalie Schmerin,                          :
                        Petitioner          :
                                            :
        v.                                  :        No. 760 C.D. 2018
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                        Respondent          :

# **O R D E R**

AND NOW, this 22nd day of March, 2019, the Order of the Unemployment

Compensation Board of Review, dated April 9, 2018, is hereby AFFIRMED.


_____
ELLEN CEISLER, Judge